Elizabeth **BARRETT**, **individually and as administratrix of the Estate of Harold Blauer, deceased, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**UNITED STATES of America, Third-party Plaintiff–Appellee,**

v.

**STATE OF NEW YORK, Third-party Defendant–Appellant.**

**No. 707, Docket 87–6189.**

United States Court of Appeals, Second Circuit.

Argued Feb. 19, 1988.

Decided Aug. 2, 1988.

of counsel), for third-party plaintiff-appellee.

Before TIMBERS, KEARSE and MAHONEY, Circuit Judges.

MAHONEY, Circuit Judge:

The State of New York appeals from an order of the United States District Court for the Southern District of New York, Constance Baker Motley, *Judge*, 668 F.Supp. 339, denying its motion to vacate a prior order of that court permitting impleader or, in the alternative, to dismiss the third-party complaint of the United States against New York for contribution in a Federal Tort Claims Act suit brought by plaintiff Elizabeth Barrett against the United States. The district court denied New York's motion on the ground, inter alia, that the eleventh amendment did not bar jurisdiction of a third-party action for contribution by the United States against New York in federal court.

On October 6, 1987, the United States moved to dismiss this interlocutory appeal on the ground that the eleventh amendment claim was frivolous. A different panel of this court denied that motion. We have appellate jurisdiction of this interlocutory appeal under 28 U.S.C. § 1291 (1982) because the district court's denial of New York's motion on eleventh amendment immunity grounds constituted a reviewable collateral order. *Minotti v. Lensink*, 798 F.2d 607, 608 (2d Cir.1986), *cert. denied*, — U.S. —, 107 S.Ct. 2484, 96 L.Ed.2d 376 (1987). *But see Libby v. Marshall*, 833 F.2d 402, 405 (1st Cir.1987) (rejecting *Minotti v. Lensink*).

Barrie L. Goldstein, Asst. Atty. Gen. of the State of N.Y., New York City (Robert Abrams, Atty. Gen. of the State of N.Y., O. Peter Sherwood, Sol. Gen., Harvey Golubock, Deputy First Asst. Atty. Gen., New York City, of counsel), for third-party defendant-appellant.

Beth A. Kaswan, Asst. U.S. Atty. for the S.D.N.Y., New York City (Rudolph W. Giuliani, U.S. Atty. for the S.D.N.Y., Richard W. Mark, Asst. U.S. Atty., New York City,

*Background*

The facts concerning this litigation are set out in greater detail in previous opinions of this court, *see Barrett v. United States*, 798 F.2d 565 (2d Cir.1986); *Barrett v. United States*, 689 F.2d 324 (2d Cir. 1982), *cert. denied*, 462 U.S. 1131, 103 S.Ct. 3111, 77 L.Ed.2d 1366 (1983), and of the United States District Court for the Southern District of New York (summarized in *Barrett v. United States*, 660 F.Supp.

1291, 1295 n. 2 (S.D.N.Y.1987)). They will not be repeated here, except as necessary to frame the issues now before this court.

Elizabeth Barrett is the administratrix of the estate of her father, Harold Blauer, who died in 1953 when the New York State Psychiatric Institute administered a drug to him in the course of a chemical warfare experiment which it was conducting in cooperation with the United States Army. Blauer had no knowledge of, and therefore did not consent to participate in, this experiment. Nor were these facts disclosed to Barrett when Blauer's estate initially reached a settlement in 1955 with New York State and the (unidentified) supplier of the drug administered to him in the amount of $18,000. This settlement was ratified by the New York Court of Claims, as required by New York law. The United States paid $9,000 of the $18,000 payment, but this was not disclosed to the payee, or apparently to the Court of Claims.

In August, 1975, however, the Secretary of the Army revealed the dismaying truth of the matter. Barrett thereupon commenced three suits in federal court, which have been consolidated. After a bench trial of Barrett's wrongful death claim against the United States under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b) and 2671–2680 (1982), the district court held that Blauer's death was proximately caused by the negligence of the United States in inadequately testing the fatal drug before providing it to the New York State Psychiatric Institute for human experimentation. On June 4, 1987, the Court entered judgment against the United States in the amount of $702,044.00. *See Barrett v. United States*, 660 F.Supp. 1291 (S.D.N.Y.1987).

New York had originally been named as a defendant by Barrett, but had been dismissed from the action early in the litigation on the ground that New York was immune to direct suit by Barrett in federal court. Prior to the trial of Barrett's FTCA claim, however, the United States sought to implead New York as a third-party defendant. On June 27, 1986, the district court granted the United States leave to file the third-party complaint, which asserted claims for contribution and indemnity. After the main FTCA trial was concluded and judgment was entered against the United States, New York moved to vacate the prior order granting impleader or, alternatively, to dismiss the third-party complaint on several grounds, including eleventh amendment immunity from suit in federal court.

In an opinion issued on September 8, 1987, *see Barrett v. United States*, 668 F.Supp. 339 (S.D.N.Y.1987), the district court held that, although the United States no longer had a claim against New York for indemnity, *see Barrett v. United States*, 668 F.Supp. at 340, its claim for contribution against New York as a joint tortfeasor was not barred by the eleventh amendment. The court also rejected contentions by New York that the United States' claim for contribution was barred by a release executed by the estate of Harold Blauer as part of the 1955 settlement with New York, and that the contribution claim was precluded, as a matter of res judicata, by the Court of Claims judgment approving the 1955 settlement and a subsequent 1976 Court of Claims dismissal of Barrett's petition for pre-suit discovery pursuant to N.Y.Civ.Prac.L. & R. 3102(e) (McKinney 1970).

For the reasons hereinafter stated, we affirm the district court's decision with respect to the eleventh amendment issue, and decline to exercise pendent appellate jurisdiction with respect to the release and res judicata issues.

## Discussion

### A. *Eleventh Amendment Immunity.*

■ The eleventh amendment[1] acts as a jurisdictional bar to suits brought in federal court against a state by citizens of another state. *See, e g., Pennhurst State*

---

1. The eleventh amendment to the United States Constitution states:

   The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another state, or by Citizens or Subjects of any Foreign State.

*School & Hosp. v. Halderman,* 465 U.S. 89, 99 n. 8, 104 S.Ct. 900, 907 n. 8, 79 L.Ed.2d 67 (1984) ("The limitation deprives federal courts of any jurisdiction to entertain such claims. . . ."). On the other hand, "[n]othing in the Eleventh Amendment 'has ever been seriously supposed to prevent a State's being sued by the United States.'" *Arizona v. California,* 460 U.S. 605, 614, 103 S.Ct. 1382, 1388, 75 L.Ed.2d 318 (1983) (quoting *United States v. Mississippi,* 380 U.S. 128, 140, 85 S.Ct. 808, 815, 13 L.Ed.2d 717 (1965)). Federal subject matter jurisdiction in such cases may be predicated upon Article III, section 2 of the Constitution, which extends the judicial power of the United States "to Controversies to which the United States shall be a Party." U.S. Const. art. III, § 2, cl. 1; *see United States v. Texas,* 143 U.S. 621, 643, 12 S.Ct. 488, 493, 36 L.Ed. 285 (1892).

Despite the constitutional vesting of original jurisdiction of such suits in the Supreme Court, *see* U.S. Const. art. III, § 2, cl. 2, Congress has given original jurisdiction to the federal district courts, as well, over suits by the United States against a state in 28 U.S.C. § 1345 (1982). *See United States v. California,* 328 F.2d 729, 736–38 (9th Cir.) (legislative history, as well as plain meaning of statute, supports this result), *cert. denied,* 379 U.S. 817, 85 S.Ct. 34, 13 L.Ed.2d 29 (1964); *United States v. Illinois,* 454 F.2d 297, 301 (7th Cir.1971) (following *United States v. California*), *cert. denied,* 406 U.S. 918, 92 S.Ct. 1767, 32 L.Ed.2d 117 (1972).

It is also now recognized that the federal courts have jurisdiction to entertain third-party suits for indemnity by the United States against a state, even where the main action was commenced by a private citizen. "[T]here is no historical or other ground for believing that Congress intended to exclude third-party proceedings commenced by the United States from the broad jurisdictional power granted the district courts under Section 1345." *Williams v. United States,* 42 F.R.D. 609, 614 (S.D.N.Y.1967). As the Seventh Circuit observed in *United States v. Illinois,* an FTCA case:

> The instant claim for indemnity is merely a claim by the United States that it has suffered a loss by reason of the negligence of Illinois. The district court, having jurisdiction over an original action by the United States for indemnity, would have jurisdiction over the identical claim brought as a third-party action. We find no sound basis for a contrary result based on the nebulous theory that the original action was "commenced" by other plaintiffs.

*United States v. Illinois,* 454 F.2d at 301.

Eleventh amendment challenges to jurisdiction in such actions for indemnity by the United States have been uniformly rejected, with the exception of one early case whose validity has been undermined.[2] *See Parks v. United States,* 784 F.2d 20, 23–25 (1st Cir.1986); *United States v. Illinois,* 454 F.2d at 300–01; *Lee v. Brooks,* 315 F.Supp. 729, 732 (D.Hawaii 1970); *Williams v. United States,* 42 F.R.D. at 616.

■ We are aware of only two cases that have squarely addressed the issue whether a third-party action for contribution, like such an action for indemnity,[3]

**2.** The first case to address this issue, *Parks v. United States,* 241 F.Supp. 297 (N.D.N.Y.1965), held that 28 U.S.C. § 1345 (1982) and Fed.R. Civ.P. 14(a) did not provide federal jurisdiction over a third-party action for indemnification by the United States against New York where the main action, pursuant to the Federal Tort Claims Act, was commenced by a private citizen. The *Parks* case, however, was immediately subjected to criticism, *e.g.,* Recent Developments, *Federal Courts & Procedure: Eleventh Amendment as a Bar to Impleader of a State by the United States,* 65 Col L.Rev. 1506 (1965), was explicitly not followed two years later by another district court in the Second Circuit, *Williams*

*v. United States,* 42 F.R.D. 609, 611–12 (S.D.N.Y. 1967), and has generally been regarded as "unsound," 13 C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 3524, at 126 n. 13 (2d ed. 1984). *See United States v. Illinois,* 454 F.2d at 301 n. 3 ("*Parks* appears to stand alone on this issue and has been disapproved by succeeding courts").

**3.** A claim for contribution differs from a claim for indemnity in several respects. A right of indemnity "arises out of a contract which may be express or may be implied in law 'to prevent a result which is regarded as unjust or unsatisfactory.'" *Rosado v. Proctor & Schwartz, Inc.,*

may be maintained by the United States against a state in federal court, consistent with the eleventh amendment. In *Lee v. Brooks*, 315 F.Supp. 729 (D.Hawaii 1970), the court decided for the United States on the jurisdictional issue, and then proceeded to consider the claims of the United States both for indemnity and contribution on the merits, although deciding adversely to the United States on both claims. *Id.* at 732. More recently, the Ninth Circuit held in *United States v. Hawaii*, 832 F.2d 1116 (9th Cir.1987), a case not cited to us by the parties, that the United States could bring a third-party claim for contribution against the State of Hawaii in an FTCA action naming the United States as defendant. *Id.* at 1117. The rationale expressed by the court, in response to Hawaii's objection to the court's jurisdiction, was:

> The United States is prosecuting its contribution claim, not the Lees' underlying claims. The eleventh amendment does not preclude it from doing so.[4]

66 N.Y.2d 21, 24, 494 N.Y.S.2d 851, 853, 484 N.E.2d 1354, 1356 (1985) (citations omitted). A claim for contribution does not arise out of an implied or express agreement, but in many states does depend upon affirmative state legislation to create a right of contribution between joint tortfeasors, since such rights were not recognized at common law. *See Putvin v. Buffalo Electric Co.*, 5 N.Y.2d 447, 454, 186 N.Y.S.2d 15, 20, 158 N.E.2d 691, 694 (1959); *see generally Northwest Airlines v. Transport Workers Union*, 451 U.S. 77, 86–88 & nn. 16–19, 101 S.Ct. 1571, 1577–99 & nn. 16–19, 67 L.Ed.2d 750 (1981). Perhaps the main conceptual distinction is that "[c]ontribution involves an apportionment of responsibility where wrongdoers are *in pari delicto*," whereas indemnity "involves an attempt to shift the entire loss from one who is compelled to pay for a loss, without regard to his own fault, to another person who should more properly bear responsibility for that loss because he was the actual wrongdoer." *County of Westchester v. Welton Becket Assoc.*, 102 A.D.2d 34, 46–47, 478 N.Y.S.2d 305, 314 (2d Dep't 1984), *aff'd*, 66 N.Y.2d 642, 495 N.Y.S.2d 364, 485 N.E.2d 1029 (1985).

**4.** The "eleventh amendment" objection asserted by the State of Hawaii in this case was probably not based upon the literal language of that amendment, which prohibits actions against a state in federal court by "Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. Presumably, the plaintiffs in *United States v. Hawaii* were citizens of Hawaii. Since *Hans v. Louisiana*,

*Id.* at 1117. Unlike *Lee v. Brooks*, the United States prevailed on the merits in *United States v. Hawaii*.

We believe that *United States v. Hawaii* reaches the correct result, and adopt the rule stated therein. Whatever the distinctions between contribution and indemnity in other areas, see *supra* note 3, we see no sound basis for a distinction in this context, and do not find the authorities cited to us by New York on behalf of such a distinction persuasive.

New York places its heaviest reliance upon *Horton v. United States*, 622 F.2d 80 (4th Cir.1980), and *Hill v. United States*, 453 F.2d 839 (6th Cir.1972). Both of these cases, however, were decided on the basis that the relevant state substantive law, which is generally applicable in FTCA actions, *see United States v. Muniz*, 374 U.S. 150, 153, 83 S.Ct. 1850, 1852, 10 L.Ed.2d 805 (1963), did not provide a basis for recovery by the United States against the pertinent state/third-party defendant in any court.[5] In *Horton*, it was held that no

134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890), however, it has been clear that as a general rule, the federal judicial power does not extend to suits against a state by its own citizens unless the state consents thereto. *See Hans v. Louisiana*, 134 U.S. 1, 21, 10 S.Ct. 504, 509, 33 L.Ed. 842 (1890) (Harlan, J., concurring). Although *Hans v. Louisiana* did not premise this rule on the (literally inapplicable) provisions of the Eleventh Amendment, see *id.* at 10–11, 10 S.Ct. at 505, the rule is often described today as a judicial extension of the eleventh amendment. *See Parks v. United States*, 784 F.2d 20, 23 (1st Cir.1986). Analytically, it would be preferable to consider the rule in terms of the interplay between traditional notions of sovereign immunity, the provisions of Article III, section 2 of the federal constitution creating the federal judicial power, and the implications of state ratification of the constitution and its several amendments.

**5.** *United States v. Illinois*, 454 F.2d 297 (7th Cir.1971), *cert. denied*, 406 U.S. 918, 92 S.Ct. 1767, 32 L.Ed.2d 117 (1972), seems at odds with *Horton* and *Hill* on this point. In *Illinois*, the Seventh Circuit, relying upon *United States v. Texas*, 143 U.S. 621, 646, 12 S.Ct. 488, 494, 36 L.Ed. 285 (1892), allowed the United States to implead and recover indemnity from Illinois despite an unqualified sovereign immunity bar in the Illinois constitution. *United States v. Illinois*, 454 F.2d at 300–02. The issue does not arise here, for, as will be considered more fully hereinafter, New York law provides no sover-

right of contribution existed under applicable state *or* federal law, 622 F.2d at 83, and no mention was made of the eleventh amendment. In *Hill*, the court specifically held that "the same defense would be available in an original action as under a third party complaint," 453 F.2d at 843, and also made no mention of the eleventh amendment. The court "[found] it unnecessary to pass upon the related issues which have been the subject of disagreement among at least three district courts when the United States has filed third party actions against states," *id.*, citing *Lee v. Brooks*, 315 F.Supp. 729 (D.Hawaii 1970), *Williams v. United States*, 42 F.R.D. 609 (S.D.N.Y. 1967), and *Parks v. United States*, 241 F.Supp. 297 (N.D.N.Y.1965), all of which addressed the jurisdictional issue.

We note also *Parks v. United States*, 784 F.2d 20, 25 (1st Cir.1986), which regarded it as an "open question" whether the eleventh amendment precluded contribution in that case, and *United States v. Arizona*, 214 F.2d 389 (9th Cir.), *reh'g denied*, 216 F.2d 248 (9th Cir.1954), which stated that if the FTCA was "intended to strip states of their immunities on suits by the United States for indemnity or contribution ...", then we come to a serious constitutional question." *id.*, 214 F.2d at 394, but decided the case on other grounds and did not reach that question. *Parks*, however, dealt with a specific rule relating to contribution in maritime cases, 784 F.2d at 25, and was addressed to the impact of the eleventh amendment upon liability for contribution only in that context. *Id.* As to *United States v. Arizona*, if there is deemed to be a conflict between the two cases, *United States v. Arizona* must be considered to have been superceded, as an expression of the Ninth Circuit's views in this area, by *United States v. Hawaii*, 832 F.2d 1116 (9th Cir.1987).

Unlike South Carolina and Tennessee, the putative third-party defendants in *Horton* and *Hill*, respectively, the state of New York has waived its immunity from suit in tort. N.Y.Ct.Cl.Act § 8 (McKinney 1963) provides in part:

> The state hereby waives its immunity from liability and action and hereby assumes liability and consents to have the same determined in accordance with the same rules of law as applied to actions in the supreme court against individuals or corporations, provided the claimant complies with the limitations of this article.

Moreover, it is undisputed that New York recognizes a right of contribution between joint tortfeasors, N.Y.Civ.Prac.L. & R. 1401–1404 (McKinney 1976), and, more specifically, a right of contribution against the state as a joint tortfeasor, *see Bay Ridge Air Rights, Inc. v. New York*, 44 N.Y.2d 49, 404 N.Y.S.2d 73, 375 N.E.2d 29 (1978).

█ It is clear, however, that a state may ordinarily waive its immunity from liability without waiving its power to choose the court or jurisdiction in which it allows itself to be sued. "A State's constitutional interest in immunity encompasses not merely *whether* it may be sued, but *where* it may be sued." *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 99, 104 S.Ct. 900, 907, 79 L.Ed.2d 67 (1984) (emphasis in original) (footnote omitted). It is precisely the latter interest that the eleventh amendment protects even when a state has expressly waived its common law sovereign immunity. *Id.* at 99 n. 9, 104 S.Ct. at 907 n. 9 ("a State's waiver of sovereign immunity in its own courts is not a waiver of the Eleventh Amendment immunity in the federal courts") (citing *Florida Dep't of Health and Rehabilitative Services v. Florida Nursing Home Ass'n*, 450 U.S. 147, 150, 101 S.Ct. 1032, 1034, 67 L.Ed.2d 132 (1981) (per curiam)).

For example, in *Minotti v. Lensink*, 798 F.2d 607 (2d Cir.1986), *cert. denied*, —— U.S. ——, 107 S.Ct. 2484, 96 L.Ed.2d 376 (1987), we recently held that although a Connecticut statute had unmistakably waived sovereign immunity in certain specified civil actions, the language of the statute did not "explicitly ... waive immunity

---

eign immunity bar to the third-party claim of the United States here, although it does unavailingly attempt to limit the ability of the United States to assert that claim in a federal district court.

to suit in federal court," *id.* at 611; dismissal for want of federal jurisdiction was accordingly directed. *Id.; see Atascadero State Hosp. v. Scanlon,* 473 U.S. 234, 241, 105 S.Ct. 3142, 3146–47, 87 L.Ed.2d 171 (1985) ("[I]n order for a state statute or constitutional provision to constitute a waiver of Eleventh Amendment immunity, it must specify the state's intention to subject itself to suit in *federal court*") (emphasis in original).

Even though New York has waived its immunity from liability, the state has made clear its intent to allow suit against it only in the New York Court of Claims. N.Y.Ct. Cl.Act § 8 (McKinney 1963); *Psaty v. Duryea,* 306 N.Y. 413, 118 N.E.2d 584 (1954). It is also clear under New York law that an action for contribution against the state as a joint tortfeasor may only be maintained in the New York Court of Claims. *Bay Ridge Air Rights, Inc. v. New York,* 44 N.Y.2d 49, 54, 404 N.Y.S.2d 73, 75, 375 N.E.2d 29, 31 (1978). Nevertheless, we hold that where New York has waived sovereign immunity from liability for contribution, thus providing the United States with a valid claim under state law, neither the eleventh amendment nor any state law bars federal jurisdiction with respect to such a claim by the United States.

We so rule because jurisdiction over suits in which the United States is a party, which is vested in the courts of the United States by Article III, section 2, clause 1 of the United States Constitution, and in the federal district courts by 28 U.S.C. § 1345 (1982), cannot be defeated by such a state legislative or constitutional provision. "The federal government, of course may sue a state in federal court *under any valid cause of action, state or federal,* even if the state attempts to limit the cause of action to suits in state courts only." *United States v. California,* 655 F.2d 914, 918 (9th Cir.1980) (emphasis added) (citing *United States v. Nevada Tax Comm'n,* 439 F.2d 435 (9th Cir.1971)); *see United States v. Hawaii,* 832 F.2d 1116, 1117 (9th Cir. 1987) (finding federal jurisdiction over contribution claim by United States against Hawaii under 28 U.S.C. § 1345 (1982) "even though Hawaii law provides that the suit must be heard in a Hawaii state court").

■ Nor is the constitutional analysis altered because this is a third-party action in an FTCA case. New York argues that by enacting the FTCA, the United States has shed the cloak of sovereignty and has consented to be treated in all respects like any private individual who would be barred by the eleventh amendment from suing or impleading New York in federal court. Under the FTCA, "[t]he United States shall be liable, respecting the provisions of this title relating to tort claims, *in the same manner and to the same extent as a private individual* under like circumstances, but shall not be liable for interest prior to judgment or for punitive damages." 28 U.S.C. § 2674 (1982) (emphasis added). *See also* 28 U.S.C. § 1346(b) (1982).

The "private individual" language of the FTCA refers, however, to the United States' liability as a defendant, not to its rights as a plaintiff or third-party plaintiff. New York overlooks the fact, moreover, that even as a defendant, in addition to the exceptions stated in section 2674 as to prejudgment interest and punitive damages, the United States has not consented to be treated as a private individual in one very important respect: it has consented to be sued only in federal court. *See* 28 U.S.C. § 1346(b) (1982) (specifying "exclusive jurisdiction" over FTCA cases in federal district courts).

In view of these clear exceptions to the "private individual" status of the United States under the FTCA, and the silence of the statute with respect to the very substantial modification New York would have us imply as to the normal standing of the . United States as a litigant, we do not read the FTCA as limiting or abrogating either the power of the United States that is implicit in our federal system to maintain, or the jurisdiction of the federal courts that is vested by Article III of the federal Constitution to hear and decide, an action against a state in federal court.

We therefore hold that the United States' claim for contribution against New York in

federal court is not barred by the eleventh amendment.

### B. *Pendent Issues.*

█ New York also contends that the district court erred in not giving effect to New York's res judicata and release defenses. These defenses are predicated upon a 1955 settlement entered into between Blauer's estate and New York, in the course of which Blauer's estate provided a general release to New York upon which the release defense is premised, and the New York Court of Claims entered a judgment approving the settlement upon which the res judicata defense is primarily premised.[6] *See Barrett v. United States,* 668 F.Supp. at 340–42.

These issues, however, are intertwined with unresolved factual issues concerning the validity of the 1955 release and the alleged fraudulent procurement of the settlement agreement. *Id.* We have already observed, with respect to this litigation, that one of the central issues is the alleged concealment, by state and federal agents, of federal involvement in the testing program at the time of the 1955 settlement. *See Barrett v. United States,* 798 F.2d 565, 578 (2d Cir.1986) (apparent that settlement would have been "much higher" but for the alleged conspiracy between state and federal officials to conceal federal involvement from plaintiff). Furthermore, these issues are sharply distinct from the eleventh amendment issue upon which our appellate jurisdiction herein is premised.

We therefore decline to exercise pendent jurisdiction with respect to these issues, and confine our review to the issue of eleventh amendment immunity over which we have jurisdiction under the collateral order doctrine. *Cf. United States v. Ianniello,* 824 F.2d 203, 209 (2d Cir.1987) (appellate court may in its discretion consider otherwise nonappealable issues where they are sufficiently intertwined with appealable issue to justify addressing them simultaneously).

---

**6.** It is also contended that the 1976 Court of Claims dismissal of Barrett's petition for presuit discovery has a res judicata impact here.

### Conclusion

The judgment of the district court denying New York's motion to dismiss the third-party complaint on eleventh amendment grounds is affirmed; the exercise of pendent appellate jurisdiction with respect to the release and res judicata issues is declined.

The district court summarily, and in our view correctly, rejected this assertion. *See Barrett v. United States,* 668 F.Supp. at 342.