208 F.3d 1171 (9th Cir. 2000)
 BETHEL NATIVE CORP., an Alaska Native Village Corp.,Plaintiff,
v.
DEPARTMENT OF THE INTERIOR; BRUCE BABBITT, Secretary of the Interior; BUREAU OF INDIAN AFFAIRS; NILES CESAR, Regional Administrator of the Bureau of Indian Affairs; ADA DEER, Assistant Secretary of the Interior for Indian Affairs, Defendants,
v.
UNITED STATES OF AMERICA, Defendant-Third-Party-Plaintiff-Appellee,
v.
STATE OF ALASKA,Third-Party-Defendant-Appellant,and CITY OF BETHEL; SOUTHWEST FUELS,INC.; MICHAEL S. SHANTZ; BEN DALE, Third-Party-Defendants.
 No. 98-3531
 UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT
 Submission Deferred December 8, 1998
Resubmitted March 20, 2000[1]
Filed April 6, 2000
 
 COUNSEL: James E. Cantor, Assistant Attorney General, Department of Law, Anchorage, Alaska, for the third-party defendant appellant.
 Kathleen Moriarty Mueller and Robert M. Loeb, United States Department of Justice, Washington, D.C., for the defendant-third-party plaintiff-appellee.
 Appeal from the United States District Courtfor the District of Alaska; James K. Singleton, Jr., Chief District Judge, Presiding. D.C.No. CV-96-00461-JKS
 Before: Thomas M. Reavley,[2] Susan P. Graber, and M. Margaret McKeown, Circuit Judges.
 GRABER, Circuit Judge:
 
 
 1
 We are called upon to decide whether the Eleventh Amendment bars the United States from asserting a third-party claim for equitable apportionment of tort liability against a state, when the plaintiff filed an original action in federal court against the United States under the Federal Tort Claims Act (FTCA). We conclude that Eleventh Amendment immunity does not extend to third-party claims brought by the United States against a state in this circumstance.
 
 FACTUAL AND PROCEDURAL BACKGROUND
 
 2
 In August 1992, the United States General Services Administration (GSA) and the Alaska State Agency for Surplus Property (ASASP) executed a GSA Standard Form 123, under which the United States donated 375,000 gallons of diesel fuel to the State of Alaska (State). ASASP, in turn, sold the fuel to the City of Bethel (City) for 10 cents per gallon. The City agreed to remove the fuel from its storage location, which was the Bethel Administrative Site operated by the United States Bureau of Indian Affairs.
 
 
 3
 From the end of August 1992 through April 1993, the City and its contractors periodically removed fuel from the Bethel Administrative Site. On or about April 15, 1993, it was discovered that a joint in the pipe connecting the fuel storage tank to the pump had cracked and that about 110,000 gallons of fuel had leaked onto the Bethel Administrative Site and onto surrounding property. The surrounding property included about 26 acres that Plaintiff, Bethel Native Corporation, owned.
 
 
 4
 On November 27, 1996, Plaintiff filed an FTCA action in federal district court against the United States, seeking $52.5 million in damages caused by the leaking fuel. The district court granted the United States leave to file a third-party complaint against the State, the City, and the City's contractors. The United States alleged that the contractors' negligence had caused the leak and, therefore, that the United States was not liable for Plaintiff's injury. The third-party complaint asserted three claims, only one of which is at issue on appeal: a claim for equitable apportionment of tort liability pursuant to Alaska Stat. S 09.17.080 (1996).[3] The State moved to dismiss that claim on the basis of Eleventh Amendment immunity. The district court denied the State's motion and its later-filed motion for reconsideration. The State appealed.
 
 STANDARD OF REVIEW
 
 5
 "Whether a state is immune from suit under the Eleventh Amendment is a question of law and is reviewed de novo." Micomonaco v. Washington, 45 F.3d 316, 319 (9th Cir. 1995).
 
 ELEVENTH AMENDMENT IMMUNITY
 
 6
 A. General Principles Applicable to Actions against a State by the United States.
 
 
 7
 The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. Under that amendment, generally, "an unconsenting State is immune from suits brought in federal courts by her own citizens[,] . . . by citizens of another State," Edelman v. Jordan, 415 U.S. 651, 663 (1974), by foreign countries, see Principality of Monaco v. Mississippi, 292 U.S. 313 (1934), and by Indian tribes or their members, see Idaho v. Coeur d'Alene Tribe of Idaho, 521 U.S. 261 (1997).
 
 
 8
 Eleventh Amendment immunity does not, however, extend to actions brought by the United States in federal courts. The words of the amendment do not encompass actions commenced or prosecuted by the United States. The Supreme Court of the United States recently made this principle clear. In Alden v. Maine, 119 S. Ct. 2240, 2268 (1999), the Court held that state employees could not sue the State of Maine for overtime pay under the Fair Labor Standards Act. The Court reasoned that Congress, using the Necessary and Proper Clause or its enumerated powers, could not abrogate the State's immunity from suit by a private party. Id. at 2256. The Court also ruled that this immunity from suit by a private party applied in state, as well as in federal, court. Id. at 2266. At the end of its opinion, however, the Court explained that the State's Eleventh Amendment immunity would not bar an action by the United States for recovery of overtime pay owed to the state's employee. Id. at 2269.
 
 
 9
 The difference between a suit by the United States on behalf of the employees and suit by the employees implicates a rule that the National Government must itself deem the case of sufficient importance to take action against the State; and history, precedent, and the structure of the Constitution make clear that, under the plan of the Convention, the States have consented to suits of the first kind but not of the second.
 
 
 10
 Id.; see also United States v. California, 655 F.2d 914, 918 (9th Cir. 1980) ("The federal government . . . may sue a state in federal court under any valid cause of action, state or federal, even if the state attempts to limit the cause of action to suits in state courts only.")The State concedes that the Eleventh Amendment does not generally bar actions by the United States against a state in federal court. Instead, the State contends that the circumstances of this case demand a departure from the general rule. The State's argument hinges on nuances of Alaska law, to which we now turn.
 
 
 11
 B. The Operation of Alaska Statute S 09.17.080 (1996).
 
 
 12
 Because Plaintiff's underlying claim accrued before August 7, 1997, the former version of section 09.17.080 applies. The relevant version of that statute provided:
 
 
 13
 (a) In all actions involving fault of more than one party to the action, including third-party defendants and persons who have been released under AS 09.16.040, the court, unless otherwise agreed by all parties, shall instruct the jury to answer special interrogatories or, if there is no jury, shall make findings, indicating
 
 
 14
 (1) the amount of damages each claimant would be entitled to recover if contributory fault is disregarded; and
 
 
 15
 (2) the percentage of the total fault of all of the parties to each claim that is allocated to each claimant, defendant, third-party defendant, and person who has been released from liability under AS 09.16.040.
 
 
 16
 (b) In determining the percentages of fault, the trier of fact shall consider both the nature of the conduct of each party at fault, and the extent of the causal relation between the conduct and the damages claimed. The trier of fact may determine that two or more persons are to be treated as a single party if their conduct was a cause of the damages claimed and the separate act or omission of each person cannot be distinguished.
 
 
 17
 (c) The court shall determine the award of damages to each claimant in accordance with the findings, subject to a reduction under AS 09.16.040, and enter judgment against each party liable. The court also shall determine and state in the judgment each party's equitable share of the obligation to each claimant in accordance with the respective percentages of fault.
 
 
 18
 (d) The court shall enter judgment against each party liable on the basis of several liability in accordance with that party's percentage of fault.
 
 
 19
 The foregoing statute effected a two-fold change in Alaska law. First, it replaced the old system of "modified joint and several liability" with a system of "pure several liability"; and, second, it eliminated the right of contribution between joint tortfeasors. Robinson v. U-Haul Co., 785 F. Supp. 1378, 1380-81 & n.2, 1383 (D. Alaska 1992). Under the new system of tort liability, the finder of fact had to determine, initially, the "total fault of all of the parties to each claim." Alaska Stat. S 09.17.080(a)(2) (1996). The fault was then "allocated to each claimant, defendant, third-party defendant, and person who has been released from liability." Id. The fault attributable to a non-party is not considered in the statutorily required allocation. See Benner v. Wichman, 874 P.2d 949, 957-58 (Alaska 1994). Finally, the court entered "judgment against each party liable on the basis of several liability in accordance with that party's percentage of fault." Alaska Stat. S 09.17.080(d) (1996).
 
 
 20
 The Alaska Supreme Court has interpreted section 09.17.080 to allow a named defendant to bring a third party into an action by asserting a claim for equitable apportionment of fault. See Benner, 874 P.2d at 956-97 ("In the absence of contribution, we hold that equitable apportionment is available as a means of bringing other tortfeasors into the action.") That claim is distinct, however, from other kinds of third-party claims, such as contribution or indemnity. Those other kinds of claims vest in the defendant/third-party plaintiff a right of recovery against the third-party defendant. By contrast, in a claim for equitable apportionment, "the newly joined party's duty, if any, [is] to the original plaintiff" and not to the defendant/third-party plaintiff. Robinson, 785 F. Supp. at 1380 n.4; see also Benner, 874 P.2d at 956 n.17 (citing Robinson with approval). Accordingly, a finding of fault against a third-party defendant results in a judgment in favor of the original plaintiff, with the liability of the defendant/ third-party plaintiff being reduced by a corresponding percentage. See Alaska R. Civ. P. 14(c) (providing that "[j]udgment may be entered against a third-party defendant in favor of the plaintiff in accordance with the third-party defendant's respective percentage of fault").
 
 
 21
 C. Analysis of the State's Arguments.
 
 
 22
 The State first argues that section 09.17.080 (1996) creates no legal duty between a defendant/third-party plaintiff and a third-party defendant. The State then reasons that the claim by the United States for equitable apportionment is, in essence, nothing more than a claim asserted on behalf of a private citizen plaintiff, who is barred from asserting a claim directly. In other words, the State argues, because "[t]he United States merely has the equitable ability under the law of apportionment to assert that the first-party plaintiff has a claim against the third-party defendant," the United States is "attempting to act as a conduit for [P]laintiff's claim against the State" and thereby avoid the Eleventh Amendment.
 
 
 23
 The key to the State's argument is the absence of a duty under Alaska law between a defendant/third-party plaintiff and a third-party defendant. For other third-party claims, such as contribution and indemnity, in which such a duty does exist, this court and others have held that the Eleventh Amendment does not immunize a state from a third-party claim in federal court. See, e.g., United States v. Hawaii, 832 F.2d 1116, 1117 (9th Cir. 1987) (holding that the Eleventh Amendment does not prohibit the United States from prosecuting a claim of contribution); Barrett v. United States, 853 F.2d 124, 130-31 (2d Cir. 1988) (same); Parks v. United States, 784 F.2d 20, 23-25 (1st Cir. 1986) (holding that the Eleventh Amendment does not bar the United States from asserting an indemnity claim against a state).
 
 
 24
 Despite the distinction that Alaska law draws between equitable apportionment and other kinds of third-party claims, the State's argument is unavailing for two reasons. First, in substance the claim by the United States is not a private action and is not intended primarily to benefit a private party. As the district court observed, the main purpose of the United States' third-party claim here was not to prosecute Plaintiff's action, but rather was "to benefit itself by reducing any damages [Plaintiff] would otherwise recover from the United States."
 
 
 25
 Second, even if Plaintiff may benefit by having the United States bring in the State as a party, the Eleventh Amendment does not prevent the United States from bringing a claim against the State. The Supreme Court made this principle abundantly clear in Alden, when it noted that the United States constitutionally could have sued the State of Maine to recover overtime wages on behalf of a state employee. See 119 S. Ct. at 2269.
 
 
 26
 The State also argues that, even if the United States' third party claim is viewed independently of Plaintiff's underlying action, Eleventh Amendment immunity still applies because the "federal court's allocation of fault to the State might be converted into a money judgment, enforceable by plaintiff." Cf. Edelman, 415 U.S. at 663 ("Thus the rule has evolved that a suit by private parties seeking to impose a liability which must be paid from public funds in the state treasury is barred by the Eleventh Amendment."). For example, the State points to the doctrine of issue preclusion (collateral estoppel). The State reasons: "If this court allows allocation of fault to the State in federal court, it is possible such a determination will bind the State and result in an unenforceable state money judgment through the doctrine of collateral estoppel." To support that proposition, the State cites Sopcak v. Northern Mountain Helicopter Services, 924 P.2d 1006, 1008 (Alaska 1996), in which the Alaska Supreme Court held that, under Alaska law, the doctrine of "[c]ollateral estoppel precludes relitigation of a previously determined issue where the first action is brought in a federal court and a second action is brought in state court."
 
 
 27
 The United States counters that, even if issue preclusion applies, the Eleventh Amendment does not prohibit its thirdparty claim, because any "subsequent state court judgment for [P]laintiff based on the federal court findings . . . would be simply an ancillary effect of the district court judgment." Cf. Edelman, 415 U.S. at 667-68 (holding that judgments for prospective relief that have an "ancillary effect on the state treasury" do not offend the Eleventh Amendment).
 
 
 28
 Although the Supreme Court has not confronted this precise issue, two of its decisions are instructive. Alden, as we already have discussed above, says that the United States may sue a State even when its claim ultimately can result in a payment (there, of overtime wages) from the state's treasury to a private party. By contrast, Edelman stated a rule applicable only to actions by private parties. See id. at 663.
 
 
 29
 An earlier case, Green v. Mansour, 474 U.S. 64 (1985), also informs our analysis, even leaving aside the fact that the United States (rather than a private party) is the claimant here. In Green, the Court faced the question whether a federal court may issue a declaratory judgment that state officials violated federal law in the past, when there is no ongoing violation. See id. at 67. The Court held that the Eleventh Amendment prohibited such a declaratory judgment, reasoning:
 
 
 30
 There is a dispute about the lawfulness of respondent's past actions, but the Eleventh Amendment would prohibit the award of money damages or restitution if that dispute were resolved in favor of petitioners. We think that the award of a declaratory judgment in this situation would be useful in resolving the dispute over the past lawfulness of respondent's action only if it might be offered in state-court proceedings as res judicata on the issue of liability, leaving to the state courts only a form of accounting proceeding whereby damages or restitution would be computed. But the issuance of a declaratory judgment in these circumstances would have much the same effect as a full-fledged award of damages or restitution by the federal court, the latter kinds of relief being of course prohibited by the Eleventh Amendment.
 
 
 31
 Id. at 73 (emphasis added).
 
 
 32
 The equitable relief sought here is analogous to the declaratory relief sought in Green. The purpose of a declaratory judgment is to clarify in an expeditious manner the "rights, liabilities, and other legal relationships" between adverse parties. 12 Moore's Federal PracticeS 57.02[1], at 57-59 (3d ed. 1998). Declaratory relief is remedial but, unlike an award of damages, it resolves disputes without creating additional substantive rights or duties between the parties. See id. The equitable apportionment remedy at issue in this case operates similarly. It establishes the proportionate liabilities of adverse tortfeasors without creating an ongoing legal duty between them. See Robinson, 785 F. Supp. at 1380 n.4 (stating that a claim of equitable apportionment does not give a third-party plaintiff a right of recovery against a third-party defendant). The remedy merely shifts a portion of the liability from the defendant/third-party plaintiff to the third-party defendant. See id.
 
 
 33
 Applying the logic of Green to the present case, however, the potential preclusive effect of the equitable apportionment of fault does not bar the United States' third-party claim. Unlike the declaratory judgment that the Supreme Court rejected in Green, the "sole efficacy " of the remedy of equitable apportionment is not as preclusion in a later state court action. Compare Native Village of Venetie I.R.A. Council v.Alaska, 944 F.2d 548, 552 (9th Cir. 1991) ("[D]eclaratory relief is not available if its sole efficacy would be as res judicata in a subsequent state court action for retroactive damages or restitution."). Rather, as noted earlier, the primary purpose of the remedy is to reduce the potential damages that Plaintiff might recover against the United States itself.
 
 CONCLUSION
 
 34
 The Eleventh Amendment does not immunize the State of Alaska against the United States' third-party claim for equitable apportionment in this tort action. Accordingly, the district court's denial of the State's motion to dismiss that claim is
 
 
 35
 AFFIRMED.
 
 
 
 Notes:
 
 
 [1]
 The panel unanimously finds this case suitable for decision without oral argument. See Fed. R. App. P. 34(a)(2).
 
 
 [2]
 The Honorable Thomas M. Reavley, Senior United States Circuit Judge for the Fifth Circuit, sitting by designation.
 
 
 [3]
 The third-party complaint also alleged (1) a claim for contractual indemnification, based on the donation agreement, and (2) a tort claim alleging negligence on the part of the State.