Joan GAGE and Karen Jurutka, as Guardians of the Person and Property of William J. Osika and Madeline Osika, Plaintiffs,

v.

The NEW YORK STATE DEPARTMENT OF HEALTH; and Antonia C. Novello, M.D., as Commissioner of the New York State Department of Health, Defendants.

No. 1:01–CV–430.

United States District Court, N.D. New York.

May 29, 2002.

Klein & Klein, P.C., Kingston, NY, for plaintiffs, Steven H. Klein, of counsel.

Eliot Spitzer, Attorney General of the State of New York, Office of the Attorney General, Albany, NY, for defendants, Lisa Ullman, Asst. Atty. Gen., of counsel.

### MEMORANDUM–DECISION AND ORDER

HURD, District Judge.

### I. INTRODUCTION

On March 23, 2001, plaintiffs Joan Gage and Karen Jurutka (collectively "plain-

tiffs") commenced the instant action against defendants New York State Department of Health (the "Department of Health") and Antonia C. Novello, M.D. ("Novello"), in her official capacity as Commissioner of the New York State Department of Health, (collectively "defendants") pursuant to 42 U.S.C. § 1983.

Defendants now move to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). Plaintiffs oppose. Oral argument was heard on October 26, 2001, in Albany, New York. Decision was reserved.

## II. *FACTS*

The facts relevant to a determination of the instant motion are stated briefly below.

Plaintiffs are the personal representatives of two nursing home patients, William and Madeline Osika. On the advice of counsel, plaintiffs transferred $22,000 out of the Osikas' assets. Based on this transfer, the state defendants imposed a penalty period of 1.545 months against the Osikas, during which they were ineligible to receive long-term health benefits under Medicaid. Pursuant to New York Administrative Directive No. 96 ADM–8 ("ADM–8"), this penalty was assessed from the first day of the month following the month of the transfer. Plaintiffs contend that calculating the penalty period from the month following the transfer, as required by ADM–8, violates federal law.[1]

Title 42 U.S.C. § 1396p(c)(1)(D) provides that, "The date specified in this subparagraph is the first day of the month *during or after* which assets have been transferred for less than fair market value and which does not occur in any periods of ineligibility under this subsection." (Emphasis added.) This language was adopted

as part of the Omnibus Budget Reconciliation Act of 1993 ("OBRA '93"), 42 U.S.C. § 1396p. Prior to 1993, the period of ineligibility commenced "with the month in which such resources were transferred." Defendants contend that the amendment granted states the option of selecting either month as the beginning of the penalty period. Plaintiffs contend that the amendment was intended only to clarify the date to be applied in the case of multiple transfers of such resources.

As a result of defendants' adoption of the month following the transfer as the start of the penalty period, plaintiffs contend that defendants violated their rights to (1) due process because Congress' preempted the field of Medicaid regulation and ADM–8 imposes a different penalty period than that applicable under federal law; and (2) equal protection because New York residents are treated differently than Medicaid recipients who are residents of other states.

## III. *STANDARD OF REVIEW*

### A. *12(b)(8) Motion To Dismiss*

In deciding a Rule 12(b)(6) motion, a court "must accept the allegations contained in the complaint as true, and draw all reasonable inferences in favor of the non-movant; it should not dismiss the complaint 'unless it appears beyond a reasonable doubt that the plaintiff[s] can prove no set of facts in support of [their] claim which would entitle [them] to relief.'" *Sheppard v. Beerman,* 18 F.3d 147, 150 (2d Cir.1994) (quoting *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)); *see also Kaluczky v. City of White Plains,* 57 F.3d 202, 206 (2d Cir.1995). However, conclusory allega-

---

1. Plaintiffs also contend that ADM–8 violates state law, in that it does not comply with New York Social Services Law § 366(5)(d)(4). Because it is held that ADM–8 complies with federal law, plaintiffs' state law claims, if any, will be dismissed pursuant to 28 U.S.C. § 1367(c).

tions that merely state the general legal conclusions necessary to prevail on the merits and are unsupported by factual averments will not be accepted as true. *See, e.g., Clapp v. Greene,* 743 F.Supp. 273, 276 (S.D.N.Y.1990); *Albert v. Carovano,* 851 F.2d 561, 572 (2d Cir.1988).

## IV. *DISCUSSION*

Defendants raise several arguments in support of their motion to dismiss. Each of these is discussed below.

### A. *Eleventh Amendment Immunity*

■ Defendants' first argument is that the plaintiffs' claims against the Department of Health must be dismissed on the grounds that the Department of Health, as an arm of the State of New York, is immune from this Section 1983 action under the Eleventh Amendment. Defendants are correct.

■ Absent a waiver of immunity by the state, or an abrogation of immunity by Congress, "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const.Amend. XI. The Supreme Court has extended this immunity to bar a citizen from suing his or her own state in federal court. *See Barrett v. United States,* 853 F.2d 124, 128 (2d Cir.1988) (citing *Hans v. Louisiana,* 134 U.S. 1, 10–11, 10 S.Ct. 504, 33 L.Ed. 842 (1890)). The nature of the "relief sought by a plaintiff suing a State is irrelevant to the question whether the suit is barred by the Eleventh Amendment." *Seminole Tribe of Florida v. Florida,* 517 U.S. 44, 58, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996) (citing *Cory v. White,* 457 U.S. 85, 90, 102 S.Ct. 2325, 72 L.Ed.2d 694 (1982) ("It would be a novel proposition indeed that the Eleventh Amendment does not bar a suit to enjoin

the State itself simply because no money judgment is sought.")). Eleventh Amendment immunity applies to state agencies and departments as well as to the state itself. *See Pennhurst State School & Hospital v. Halderman,* 465 U.S. 89, 100, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984). As such, it is held that there is no jurisdiction over plaintiffs' claims against the Department of Health in this action, and the Department of Health must be dismissed as a party pursuant to Fed.R.Civ.P. 12(b)(6).

■ Next, defendants contend that the Eleventh Amendment bars plaintiffs' claims against Novello to the extent such claims seek to require Novello to recalculate the commencement of the penalty period imposed against the Osikas. Defendants contend that the doctrine of *Ex Parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), pursuant to which state officials may be sued in their official capacities for injunctive relief, applies only to enjoin such officials from *future* violations of federal law.

Where, as here, the imposition of retroactive equitable relief will require the expenditure of funds from the public treasury, the action is properly viewed as a "suit" from which the state is immune under the Eleventh Amendment. This is so because such an award is "in practical effect indistinguishable in many aspects from an award of damages against the State." *Edelman v. Jordan,* 415 U.S. 651, 668, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974). Accordingly, because the requested equitable relief (requiring the recalculation of the Osikas' penalty period) will result in the expenditure of public funds, it is held that this cause of action is barred by the Eleventh Amendment.

### B. *Qualified Immunity*

■ Defendants also argue that Novello is entitled to qualified immunity from plaintiffs' remaining causes of action be-

cause her actions in interpreting and applying ADM–8 were reasonable, in that she relied on the decision of the New York Court of Appeals in *Brown v. Wing*, 93 N.Y.2d 517, 693 N.Y.S.2d 475, 715 N.E.2d 479 (1999). Defendants are incorrect. Qualified immunity is not a defense to a cause of action seeking prospective equitable relief. *See Nicholas v. Miller*, 189 F.3d 191, 195 (2d Cir.1999) (citing *Rodriguez v. City of New York*, 72 F.3d 1051, 1065–66 (2d Cir.1995)). Accordingly, plaintiffs' claims against Novello for prospective injunctive relief will not be dismissed on this basis.

## C. *Viability of Plaintiffs' Federal Causes of Action*

■ As noted above, plaintiffs plead causes of action under the due process clause and equal protection clause[2] of the United States Constitution. Each of these causes of action is predicated upon the theory that ADM–8, as applied by the defendants, conflicts with 42 U.S.C. § 1396p(c)(1)(D) and is, therefore, preempted under 42 U.S.C. § 1396p(c)(4).[3] Because ADM–8 does not conflict with the terms of Section 1396(c)(1)(D), plaintiffs have failed to state any federal causes of action upon which relief can be granted, and their complaint must be dismissed in its entirety pursuant to Fed.R.Civ.P. 12(b)(6).

### 1. *Preemption*

■ Beginning with the text of the statute, by permitting the calculation of the penalty period from the "first day of the month during or after which assets have been transferred for less than fair market value," it appears that, as a matter of statutory construction, Congress has provided states participating in the Medicaid program the option of calculating the penalty provision from *either* the first day of the month in which the transfer occurred *or* the first day of the month the following the transfer. As such, the adoption of the latter as the date for calculation of the penalty period (as New York so elected in ADM–8), is consistent with the text of Section 1396p(c)(1)(D).

■ Plaintiffs argue that Section 1396p(c)(1)(D) was not intended to confer any such discretion upon the states, but instead was an attempt by Congress to address the "plethora of litigation" arising from multiple transfers that occurred under the statute as it existed prior to amendment by the OBRA '93. Their argument on this point is that "[p]laintiffs opine that Congress believed the new language would alleviate the confusion by specifying that the ineligibility period would begin on the first day of the first month for all assets transferred 'during or after' that month." (Pl.Mem. at 7.) Unfortunately for plaintiffs, they can find no support for their argument in either the text of the statute or its legislative history. Instead, they rely upon general statements regarding the comprehensive scope of Medicaid regulation made by state governors and legislators at a conference addressing Medicaid issues as evidence that

---

**2.** Plaintiffs' equal protection claim must be dismissed as meritless. The hallmark of such a claim is a showing by the plaintiffs that they are treated differently than other, "similarly situated" individuals. *Cleburne v. Cleburne Living Center, Inc.*, 473 U.S. 432, 439, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985). Plaintiffs cannot show that they were treated differently than other residents of New York, and therefore, have failed to allege that the defendants

treated them differently than other similarly situated persons.

**3.** 42 U.S.C. § 1396p(c)(4) provides that, "A state (including a state which has elected treatment under § 1902(f)) may not provide for any period of ineligibility for an individual due to transfer of resources for less than fair market value except in accordance with this subsection."

Congress did not intend to loosen its preemption of the field of Medicaid regulation through the 1993 amendments.

Such statements are wholly insufficient to overcome the effect of the plain language of the statute. *See Auburn Housing Authority v. Martinez,* 277 F.3d 138, 149, n. 5 (2d Cir.2002). Accordingly, it is held that ADM-8 does not conflict with the requirements of Section 1396p(c)(1)(D), and therefore it is not preempted by Section 1396p(c)(4). Plaintiffs have failed to state a claim for relief and their complaint must be dismissed.

### 2. *Vagueness*

 As an alternative argument, plaintiffs assert that Section 1396p, as well as state law enacted pursuant to it, is unconstitutionally vague, and therefore any state action taken pursuant to it violates the notice requirement of due process. (Pl.Mem. at 8.) Plaintiffs assert that Section 1396p is unconstitutionally vague because "[m]any people, of arguably above-average intelligence," have disagreed about its meaning. Where a statute does not impose criminal liability or affect fundamental rights, such as the right to free speech, courts merely inquire whether the statute is "clear enough to afford one a reasonable opportunity to know what is permitted and what is proscribed." *Textile Workers Pension Fund v. Standard Dye & Finishing Co.,* 725 F.2d 843, 855–56 (2d Cir.1984) ("The degree of vagueness tolerated under the constitution varies, in part, according to the nature of the enactment. Statutes governing economic regulation are subject to a less stringent vagueness test than those governing constitutionally protected rights.") (citing *Vil-*

*lage of Hoffman Estates v. Flipside, Hoffman Estates, Inc.,* 455 U.S. 489, 498–99, 102 S.Ct. 1186, 71 L.Ed.2d 362 (1982)).[4]

In the instant case, plaintiffs had ample opportunity to know that a penalty provision would be imposed from the month following the transfer of the Osikas' funds. As noted above, the language of Section 1396p(c)(1)(D) clearly provides that the penalty provision could be calculated from the month either during or following the occurrence of a prohibited transfer. The express language of ADM-8 gave reasonable notice that New York would apply the latter month in calculating any penalty period. In addition, plaintiffs' transfer occurred more than six months after the New York Court of Appeals affirmed the ADM-8 penalty period calculation in its decision in *Brown v. Wing, supra,* 93 N.Y.2d 517, 693 N.Y.S.2d 475, 715 N.E.2d 479. As such, plaintiffs were afforded a "reasonable opportunity" to know what was required under the law, and their vagueness challenge must be rejected.

## V. *CONCLUSION*

Upon consideration of the submissions and arguments of the parties, it is hereby

ORDERED that

1. Defendants' motion to dismiss the complaint pursuant to Fed.R.Civ.P. 12(b)(6), is GRANTED; and

2. The complaint is DISMISSED.

The Clerk is directed to enter judgment accordingly.

IT IS SO ORDERED.

---

**4.** Plaintiffs cite *Connally v. General Constr. Co.,* 269 U.S. 385, 391, 46 S.Ct. 126, 70 L.Ed. 322 (1926), for the unremarkable proposition that "[a] statute is considered vague if a person of ordinary intelligence must necessarily guess at its meaning." (Pl.Mem. at 8.) However, *Connally* involved a criminal statute, and accordingly, applied a more rigorous standard to the language at issue.