**John DOE, a Minor (born 01/28/90) By his Next Friend, Jane Doe, and Jane DOE, Individually, Plaintiffs,**

v.

**STATE OF HAWAII DEPARTMENT OF EDUCATION; Sonia Zane; David Keala; Herman Aizawa; Ralph Murakami; Maude Yamakawa; Department of Education of the State of Hawaii by and Through its Agent and/or Instrumentality A–Plus Program DBA A–Plus Program at Pukalani Elementary School, Defendants.**

Civ. No. 00–00044 ACK/KSC.

United States District Court, D. Hawai'i.

Feb. 23, 2004.

Shelby Anne Floyd, Corianne W. Lau, Alston, Hunt Floyd & Ing, Stanley E. Levin, Davis Levin Livingston Grande, Edie A. Feldman, Law Office of Edie A. Feldman, Honolulu, HI, for Plaintiffs.

Cindy S. Inouye, Laurence K. Lau, Office of the Attorney General, Heidi M. Rian, Elizabeth A. Schaller, John Cregor, Jr., Gary Hynds, Kathleen N.A. Watanabe, Honolulu, HI, for Defendants.

*ORDER DISMISSING PLAINTIFFS' COUNTER–MOTION FOR SUMMARY JUDGMENT; GRANTING IN PART AND DENYING IN PART STATE DEFENDANTS' MOTION TO STRIKE; GRANTING IN PART AND DENYING IN PART STATE DEFENDANTS MOTION FOR JUDGMENT ON THE PLEADINGS AND SUMMARY JUDGMENT; AND DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT*

KAY, District Judge.

## BACKGROUND

This lawsuit for damages arises from two separate disciplinary acts individually administered by Defendant Sonia Zane ("Defendant Zane") [1] on February 4, 1998,

---

1. As noted *infra,* the parties agreed, by settlement, to dismiss Defendant Zane in her individual capacity.

and Defendant David Keala ("Defendant Keala") on February 19, 1998, against Plaintiff John Doe ("John"),[2] a second grade student at Pukalani Elementary School who also attended the A–Plus after school program at the school. Defendant Zane was an A–Plus worker and an employee of Defendant State of Hawaii Department of Education ("Defendant Hawaii DOE"). Defendant Keala[3] was vice-principal at the school.

Throughout the time of both incidents, Defendant Yamakawa was Acting Principal at the school, Defendant Murakami was Maui District Superintendent for the Hawaii DOE, and Defendant Aizawa was the Hawaii DOE Superintendent. Defendant Hawaii DOE is an agency of the State of Hawaii. Defendant A–Plus is a program of the Hawaii DOE, but is not a separate entity or agency.

## I. *Factual Background*[4]

While participating in the A–Plus after school program at Pukalani Elementary School on February 4, 1998, Plaintiff John was "acting up."[5] Plaintiffs assert that as a result of his behavior, Defendant Zane "smacked" John on the back of the head and then dragged him by his shirt across the school yard to the principals office.[6]

A couple of weeks later, on February 19, 1998, John and two other boys reported to Defendant Keala during lunch hour to be disciplined for fighting. Two other students were on detention for having misbe-

haved. As punishment, the five students stood face forward with their noses touching an outside wall at the back of the cafeteria while wearing signs that read "On Detention." After standing for approximately two minutes, two students were dismissed on grounds of good behavior. The three remaining students, whom Defendant Keala believed were "horsing around," were separated along the wall. Soon thereafter, another student was released for good behavior. At this point, only John and another boy remained. According to Defendant Keala, who periodically checked on the boys while monitoring the students in the cafeteria, the boys continued to "horse around." Defendant Keala warned the boys at least twice while they stood face-forward against the wall that he would tape their heads to a tree if they continued to misbehave.

Defendant Keala ultimately followed through on his threat. After having instructed the boys to stand face forward against the tree, Defendant Keala momentarily entered the cafeteria. When he returned, Defendant Keala alleges that he caught John and his classmate climbing the tree. The boys, upon taking notice of Defendant Keala's return, quickly jumped down from the tree and put their noses to it. Shortly thereafter, Defendant Keala sent another student to the office to retrieve masking tape. After returning from the office, Defendant Keala instructed the

---

2. John was diagnosed with Attention Deficit Hyperactivity Disorder ("ADHD") when he was in the first grade.

3. Defendant Keala worked within the State of Hawaii's Department of Education for over thirty years as a teacher and administrator before serving as vice-principal of Pukalani Elementary School.

4. The discussion of facts by the Court in this order is solely for the purpose of evaluating

the parties motions, and does not limit any determinations to be made by the ultimate finder of fact in any way.

5. Plaintiffs assert that John was merely exhibiting conduct manifested by his disability.

6. Defendant Zane attests that she did not strike John, and "tugged" at his shirt sleeve when escorting him to the principal's office.

student to tape the boys' heads to the tree. The one inch wide masking tape was wrapped once around each boy's head and the limbs of the tree while Defendant Keala supervised from about five feet away.

After being taped to the tree for approximately five minutes, the boys were released. According to the parties, Defendant Keala instructed a fifth grade girl to take the tape off after she commented that he should not be doing that. Upon releasing the boys, who did not appear upset at the time, Defendant Keala apologized, explaining that "he had to do that" and stressing the fact that he had warned them.

## II. *Procedural Background*

As a result of these incidents, on January 14, 2000, John and his mother, Plaintiff Jane Doe ("Jane"), filed this lawsuit against Defendants, asserting claims for: (1) Violation of 42 U.S.C. §§ 1981 and 1983; (2) Negligence and Gross Negligence; (3) False Imprisonment; (4) Assault and Battery; (5) Negligent Infliction of Emotional Distress; (6) Violation of Title IX; (7) Violation of Hawaii Revised Statutes ("HRS") § 302A–1001; (8) Loss of Consortium; and (9) Punitive Damages.[7] On January 18, 2000, the Court granted Plaintiffs' Ex Parte Motion to file the complaint under "Doe" designations and for appointment of next of friend.

Defendant Keala filed a Motion for Judgment on the Pleadings and for Summary Judgment on September 10, 2001. He sought to dismiss the claims based on violation of (1) the Hawaii and United States Constitutions; (2) 42 U.S.C. § 1981; (3) 42 U.S.C. § 1983; as well as Plaintiffs'

(4) Loss of Consortium; (5) Negligent Infliction of Emotional Distress, and (6) Punitive Damage claims. Defendant Keala also argued that summary judgment should be granted because he was entitled to qualified immunity and that the Court should decline to exercise supplemental jurisdiction over Plaintiffs' state law claims.

By Order dated November 29, 2001, the Court granted in part and denied in part Defendant Keala's motion. The Court denied Defendant Keala's motion as to qualified immunity with respect to the § 1983 claim, insofar as it was based on violation of the Fourteenth and/or Fourth Amendment to the United States Constitution. However, as § 1983 is a vehicle to enforce federally created rights, the Court granted Defendant Keala's motion with respect to the § 1983 claim based on violation of the Hawaii Constitution. The Court also dismissed Plaintiffs' claims for violation of the Fifth and Ninth Amendments to the United States Constitution, Section 1981, and Title IX.[8]

With respect to Plaintiffs' state law claims, the Court denied Defendant Keala's motion as to the Loss of Consortium and Negligent Infliction of Emotional Distress claims. However, the Court granted Defendant Keala's motion with respect to Plaintiffs' Punitive Damages claims.

Defendant Keala subsequently appealed the Court's Order with respect to the denial of qualified immunity.[9] On December 10, 2001, Defendant Keala filed a Motion to Stay Pending Appeal.[10] The Court granted Defendant Keala's Motion for Stay Pending Appeal on January 15, 2002.

---

7. The causes of action in Plaintiffs' original Complaint were not listed in sequential order.

8. Plaintiffs conceded abandonment of these claims.

9. As noted *infra,* the Ninth Circuit affirmed the Court's Order.

10. Defendant Zane and State Defendants filed Joinders to Defendant Keala's Motion.

On February 6, 2002, Plaintiffs filed an Amended Complaint,[11] asserting the following claims: (1) Violation of Rehabilitation Act (Section 504); (2) Violation of 42 U.S.C. § 1983; (3) Negligence and Gross Negligence; (4) False Imprisonment; (5) Assault and Battery; (6) Negligent Infliction of Emotional Distress; (7) Violation of H.R.S. § 302A–1001; (8) Loss of Consortium; and (9) Punitive Damages.

On June 12, 2002, the deadline to file dispositive motions, Defendant Sonia Zane filed a Motion for Judgment on the Pleadings, State Defendants filed a Motion for Summary Judgment, and Plaintiffs filed a Motion for Partial Summary Judgment. However, on June 24, 2002, Plaintiffs filed an Amended and Supplemental Memorandum of Law in support of their Motion for Partial Summary Judgment. State Defendants filed a Motion to Strike on July 1, 2002.[12] Plaintiffs filed their Opposition to the motion to strike on July 5, 2002.

Following a number of disputes with respect to these motions and other issues, the parties stipulated in mid-July, 2002 to stay the motions until the Ninth Circuit issued a decision on Defendant Keala's interlocutory appeal. The Ninth Circuit affirmed the Court's November 29, 2001 Order on June 30, 2003.

Following the remand of the case by the Ninth Circuit, the parties reinstated their motions.[13] State Defendants filed their Opposition to Plaintiffs' Motion for Partial Summary Judgment on December 18, 2003, and filed their Opposition to Plaintiffs' Amended and Supplemental Memorandum of Law. Also on December 18, 2003, Plaintiffs filed their Opposition to Defendant Zane's Motion for Judgment on the Pleadings, and filed their Opposition to State Defendants' Motion for Judgment on the Pleadings and Summary Judgment. Along with their Opposition to State Defendants' Motion, Plaintiffs filed a Counter–Motion for Summary Judgment. On December 22, 2003, Plaintiffs filed an Errata regarding their Motion in Opposition and Counter–Motion to State Defendants' Motion.

11. Plaintiffs filed a Motion to Amend Complaint on October 17, 2001, which the Court granted on December 11, 2001.

12. Defendants Zane and Keala filed joinders to State Defendants' motion to strike.

13. On October 22, 2003, Defendant Zane filed an Amended Notice of her June 12, 2002 Motion for Judgment on the Pleadings. Also on October 22, 2003, State Defendants filed an amended notice of their June 12, 2002 Motion for Judgment on the Pleadings and Summary Judgment. Plaintiffs, however, did not file an Amended Notice of their June 12, 2002 Motion for Partial Summary Judgment. Defendants' motions were calendared for December 9, 2003.

A dispute subsequently arose between the parties as to whether Plaintiffs' motion would also be heard that day. As a result, on November 14, 2003, the parties were instructed to re-notice their motions, which were re-calendared for hearing on February 2, 2004.

On November 14, 2003, Plaintiffs filed an Amended Notice of their June 12, 2002 Motion for Partial Summary Judgment. State Defendants filed a Second Amended Notice of motion on November 19, 2003. Defendant Zane filed an Amended Notice of motion on November 20, 2003.

On November 24, 2003, Plaintiffs filed a Notice of Hearing for their June 24, 2002 Amended and Supplemental Memorandum. To resolve the parties' dispute over whether the hearing included this memorandum, the Court allowed Plaintiffs to notice their Amended and Supplemental Memorandum, and also allowed State Defendants to reinstate their July 1, 2002 Motion to Strike.

On November 25, 2003, State Defendants filed an Amended Notice of their July 1, 2002 Motion to Strike. Defendant Zane filed her Joinder to the Motion to Strike on December 5, 2003, and Defendant Keala filed his Joinder to the Motion to Strike on December 16, 2003.

On January 8, 2004, State Defendants filed their Reply in support of their Motion for Judgment on the Pleadings and for Summary Judgment, combined with their Opposition to Plaintiffs' Counter–Motion for Summary Judgment. Also on January 8, 2004, Plaintiffs' filed their Reply in support of their Motion for Partial Summary Judgment. Defendant Sonia Zane filed a Statement with regard to her pending Motion for Judgment on the Pleadings, and also filed a Reply in support of State Defendants' Motion for Judgment on the Pleadings and for Summary Judgment on January 8, 2004. Plaintiffs filed a Reply in support of their Counter–Motion for Summary Judgment on January 12, 2004. Oral argument took place on February 2, 2004. At the hearing, the parties averred that they reached a settlement agreement dismissing Defendant Zane from the lawsuit in her individual capacity, and withdrew Defendant Zane's motion from consideration.

### STANDARD

### I. *Judgment on the Pleadings*

■ Judgment on the pleadings, pursuant to Federal Rules of Civil Procedure 12(c), is proper when the moving party clearly establishes on the face of the pleadings that (1) no material issue of fact remains to be resolved; and (2) it is entitled to judgment as a matter of law. *Doleman v. Meiji Mut. Life Ins. Co.*, 727 F.2d 1480, 1482 (9th Cir.1984). "In reviewing the defendants' motions under Fed.R.Civ.P. 12(c), the district court views the facts as presented in the pleadings in the light most favorable to the plaintiffs, accepting as true all the allegations in their complaint and treating as false those allegations in the answer that contradict the plaintiffs' allegations." *Hoeft v. Tucson Unified Sch. Dist.*, 967 F.2d 1298, 1301 (9th Cir.1992).

■ Where the district court goes beyond the pleadings to resolve an issue, the motion properly is treated as one for summary judgment. Fed.R.Civ.P. 12(c); *Hal Roach Studios v. Richard Feiner & Co.*, 896 F.2d 1542, 1550 (9th Cir.1989).

### II. *Summary Judgment*

The purpose of summary judgment is to identify and dispose of factually unsupported claims and defenses. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Summary judgment is therefore appropriate when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." [14] Fed.R.Civ.P. 56(c).

"A fact is 'material' when, under the governing substantive law, it could affect the outcome of the case. A genuine issue of material fact arises if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.' " [15] *Thrifty Oil Co. v. Bank of Am. Nat'l Trust & Sav. Ass'n*, 310 F.3d 1188, 1194 (9th Cir.2002) (quoting *Union Sch. Dist. v. Smith*, 15 F.3d 1519, 1523 (9th Cir.1994))

14. Affidavits made on personal knowledge and setting forth facts as would be admissible at trial are evidence that a court may consider when determining whether a material issue of fact exists. Fed.R.Civ.P. 56(e). Legal memoranda and oral argument are not evidence and do not create issues of fact. *See British* *Airways Bd. v. Boeing Co.*, 585 F.2d 946, 952 (9th Cir.1978).

15. Disputes as to immaterial issues of fact do "not preclude summary judgment." *Lynn v. Sheet Metal Workers' Int'l Ass'n*, 804 F.2d 1472, 1478 (9th Cir.1986).

(internal citations omitted). Conversely, where the evidence "could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (quoting *First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 289, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968)).

The moving party has the burden of persuading the Court as to the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323, 106 S.Ct. 2548. The moving party may do so with affirmative evidence or by "'showing'—that is pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325, 106 S.Ct. 2548. All evidence and reasonable inferences drawn therefrom are considered in the light most favorable to the nonmoving party. *See, e.g., T.W. Elec. Serv. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630–31 (9th Cir.1987). So, too, the Court's role is not to make credibility assessments. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Accordingly, if "reasonable minds could differ as to the import of the evidence," summary judgment will be denied. *Id.* at 250–51, 106 S.Ct. 2505.

Once the moving party satisfies its burden, however, the nonmoving party cannot simply rest on the pleadings or argue that any disagreement or "metaphysical doubt" about a material issue of fact precludes summary judgment. *See Celotex*, 477 U.S. at 322–23, 106 S.Ct. 2548; *Matsushita Elec.*, 475 U.S. at 586, 106 S.Ct. 1348; *Cal. Arch. Bldg. Prods., Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir. 1987). Nor will uncorroborated allegations and "self-serving testimony" create a genuine issue of material fact. *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir.2002); *see also T.W. Elec. Serv.*, 809 F.2d at 630. The nonmoving party must instead set forth "significant probative evidence" in support. *T.W. Elec. Serv.*, 809 F.2d at 630. Summary judgment will thus be granted against a party who fails to demonstrate facts sufficient to establish an element essential to his case when that party will ultimately bear the burden of proof at trial.[16] *See Celotex*, 477 U.S. at 322, 106 S.Ct. 2548.

## DISCUSSION

### I. Plaintiffs' Counter–Motion for Summary Judgment

Along with their Opposition to Defendants' Motion for Summary Judgment filed December 18, 2003, Plaintiffs filed a Counter–Motion for Summary Judgment. State Defendants ask the Court to dismiss Plaintiffs' counter-motion because it was filed after the dispositive motions deadline.

At the time the parties originally filed their motions, on June 12, 2002, the dispositive motions deadline was set as June 12, 2002. *See* (Amended Rule 16 Scheduling

**16.** When the moving party also has the burden of proof in an element of a claim, it has the "burden of establishing a prima facie case on the motion for summary judgment." *UA Local 343 of the United Ass'n of Journeymen v. Nor–Cal Plumbing, Inc.*, 48 F.3d 1465, 1471 (9th Cir.1994). Upon showing a prima facie case, the burden of production shifts and it becomes "incumbent on [the nonmoving party] to 'set forth specific facts showing that there is a genuine issue for trial,' by evidence cognizable under that rule." *Id.* (quoting Fed.R.Civ.P. 56(e)); Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, 10A Federal Practice & Procedure § 2727 (3d ed.1998). The ultimate burden of persuasion as to the non-existence of any genuine issues of material fact remains on the moving party. *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir.2000); *accord Dye v. United States*, 121 F.3d 1399, 1409 (10th Cir. 1997).

Order, filed Jan. 15, 2002). However, following the stay of proceedings pursuant to the Ninth Circuit's review of this Court's decision as to Defendant Keala's qualified immunity, the parties filed stipulations continuing the unclosed deadlines in the case. After the Ninth Circuit affirmed this Court's November 29, 2001 Order and remanded the case, the Court held a status conference with the parties on August 1, 2003. At the conference, the parties agreed that the dispositive motions deadline should be July 9, 2003. The Court then filed a Second Amended Rule 16 Scheduling Order on August 6, 2003, confirming July 9, 2003 as the deadline for dispositive motions. Thus, Plaintiffs filed their counter-motion on December 18, 2003, over six months after the dispositive motions deadline.

■■■ As explained by the Ninth Circuit: "The scheduling order 'control[s] the subsequent course of the action' unless modified by the court. Orders entered before the final pretrial conference may be modified upon a showing of 'good cause.' ..." *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 608 (9th Cir.1992) (citations omitted) (quoting Fed.R.Civ.P. 16(b), 16(e)).

■■■ Plaintiffs make no explanation for its untimely filing, but rely on Local Rule 7.9, which allows a party to file a counter-motion along with an opposition, if it relates to the subject matter of the original motion. However, counter-motions are still subject to the Rule 16 deadline. As the Ninth Circuit held in *Johnson:*

> A scheduling order "is not a frivolous piece of paper, idly entered, which can be cavalierly disregarded by counsel without peril." ... Disregard of the

order would undermine the court's ability to control its docket, disrupt the agreed-upon course of the litigation, and reward the indolent and the cavalier. Rule 16 was drafted to prevent this situation and its standards may not be short-circuited....

*Id.* at 610 (citations omitted) (quoting *Gestetner Corp. v. Case Equip. Co.*, 108 F.R.D. 138, 141 (D.Me.1985)) (citing *Forstmann v. Culp*, 114 F.R.D. 83, 85 (M.D.N.C.1987); *Fin. Holding Corp. v. Garnac Grain Co.*, 127 F.R.D. 165, 166 (W.D.Mo.1989); *Riofrio Anda v. Ralston Purina Co.*, 959 F.2d 1149, 1155 (1st Cir.1992)). In *U.S. ex rel. Int'l. Bus. Machs. Corp. v. Hartford Fire Ins. Co.*, 112 F.Supp.2d 1023 (D.Haw.2000), Judge Ezra applied *Johnson* to the interaction between Rule 16 and Local Rule 7.9 and held that Rule 16 controlled. *Accord Makin ex rel. Russell v. Hawaii*, 114 F.Supp.2d 1017 (D.Haw.1999). This Court finds Judge Ezra's reasoning sound. Accordingly, a party that wishes to amend their complaint after the deadline set by a Rule 16 scheduling order must first satisfy the Rule 16 standards to modify the scheduling order.

■■■ Plaintiffs do not show the diligence required to meet the "good cause" standard for modifying a Rule 16 order.[17] *Id.* at 609. State Defendants' Motion for Judgment on the Pleadings and for Summary Judgment was originally filed on June 12, 2002—over one and a half years before Plaintiffs filed their counter-motion. Plaintiffs were fully aware of their arguments made in the counter-motion well before they agreed to the deadlines set forth in the Second Amended Scheduling Order. They did not even seek to amend the Second Scheduling Order and furthermore did not seek to amend the Third

---

**17.** The Court notes that Plaintiffs do not move to actually amend the scheduling order, but merely rely on Local Rule 7.9.

Amended Scheduling Order. The Court thus finds that Plaintiffs did not conduct the due diligence required to show good cause. *Id.*

The Court therefore dismisses Plaintiffs' Counter–Motion for Summary Judgment.[18]

## II. *Defendant's Motion to Strike*

In their motion to strike filed July 12, 2002, Defendants [19] ask the Court to strike (1) Plaintiffs' Amended and Supplemental Memorandum of Law in Support of Motion for Partial Summary Judgment; (2) Declaration of Edie A. Feldman; (3) Exhibits "Q–R"; (4) Plaintiffs' Concise Statement of Facts Re: Supplemental Memorandum of Law in Support of Motion for Partial Summary Judgment filed June 12, 2002; and (5) Plaintiffs' Third Supplemental Expert Disclosures and Exhibit "E."

Defendants argue that at the time Plaintiffs filed these documents, the respective deadlines for dispositive motions and expert disclosure had closed. *See* (Defendant's Motion to Strike at 3 (quoting (Amended Rule 16 Scheduling Order, filed Jan. 15, 2002))). However, as discussed *supra*, after the stay of proceedings pursuant to the Ninth Circuit's review of this Court's decision as to Defendant Keala's qualified immunity was lifted, the Court held a status conference with the parties on August 1, 2003. During the conference, the parties agreed on July 9, 2003 as the dispositive motions deadline, and on June 9, 2003 as the deadline for expert witness disclosure by both parties. In its Second Amended Rule 16 Scheduling Order, filed August 6, 2003, the Court confirmed July 9, 2003 as the deadline for dispositive motions, and June 9, 2003 as the deadline for expert witness disclosure by both parties. Accordingly, both the Supplemental Memorandum and associated filings filed on June 24, 2002; and the Expert Witness Disclosure and associated filings filed on June 26, 2002 were timely filed. The Court accordingly finds the arguments as to time moot. At oral argument, Defendants conceded this point, and withdrew their motion to strike as to the expert

---

**18.** Even if the Court were to consider Plaintiffs' counter-motion, it would find that the motion lacks merit. First, as to Defendant Keala's individual capacity, he timely filed an Answer to Plaintiffs' original Complaint on April 27, 2000. The only substantive change between Plaintiffs' original Compliant and their First Amended Complaint that applies to Defendant Keala is the addition of claims under Section 504 of the Rehabilitation Act ("Section 504"). As discussed *infra*, claims under Section 504 cannot be asserted against an individual. Thus, the First Amended Complaint does not assert any new claims against Defendant Keala in his individual capacity. The Court therefore considers Defendant Keala's Answer to the original Complaint also to be the answer to the First Amended Complaint. *Stanley Works v. Snydergeneral Corp.*, 781 F.Supp. 659, 664–65 (E.D.Cal.1990) (citing Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, 6 Federal Practice & Procedure § 1476, 558–59 (1990)), *cited in Dennis v. Thurman*, 959 F.Supp. 1253, 1257 n. 2 (C.D.Cal.1997).

Second, as to Defendant Keala's official capacity, as discussed *infra*, it is clearly established that an official capacity lawsuit is no different from a suit against the state itself, and that a state's agencies and employees acting in their official capacities all share the Eleventh Amendment immunity of the state. *See infra* Discussion Section III.B.2. State Defendants filed their Answer to Plaintiffs' original Complaint on April 28, 2000, and filed their Answer to Plaintiffs' First Amended Complaint on February 19, 2002. In both their Answer to the original Complaint and their Answer to the First Amended Complaint, State Defendants asserted, inter alia, Eleventh Amendment immunity.

The Court therefore finds no surprise or prejudice to Plaintiffs in Defendant Keala's assertion of Eleventh Amendment immunity in his official capacity, and accordingly would find that Plaintiffs' Counter–Claim lacks merit, if the Court were to consider it.

**19.** Both Defendants Zane and Keala joined the State Defendants' in this motion.

witness disclosure. The Court accordingly denies State Defendants' Motion to Strike as to the expert witness disclosure.

Defendants, however, also argue that Plaintiffs raise new claims without amending the complaint. The Court agrees. In their First Amended Complaint, Plaintiffs assert that the "imposition of discipline" by Defendants Zane and Keala violated Section 504. They do not, however, assert denial of FAPE nor an inadequate IEP.

Plaintiffs assert in both their June 12, 2002 Motion for Partial Summary Judgment and their June 24, 2002 Amended and Supplemental Memorandum that Defendants Hawaii DOE and A–Plus also violated Section 504 because they failed to provide John with either a Free Appropriate Public Education ("FAPE")[20] or an adequate Individualized Education Program ("IEP"),[21] as required by the Individuals with Disabilities Education Act ("IDEA"). 20 U.S.C. §§ 1401(d)(1)(A); 1414(d). Plaintiffs argue that the Defendants DOE and A–Plus therefore discriminated against John in violation of Section 504.

■ The Court finds that the First Amended Complaint does not support these additional Section 504 claims relating to IDEA. At the time Plaintiffs filed their motion for partial summary judgment and supplemental and amended memorandum in June 2002, further amendment of the complaint required not only leave of Court,

but also required modification of the Amended Rule 16 Scheduling Order entered January 15, 2002, which set the deadline for motions to amend pleadings as April 12, 2002.

Although the Second Amended Rule 16 Scheduling Order entered August 6, 2003, after the Ninth Circuit's decision, confirmed that the deadline to amend pleadings was May 9, 2003, Plaintiffs have never filed any motion to amend the First Amended Complaint. The Court's Third Amended Rule 16 Scheduling Order entered November 13, 2003 reflected that the deadline to amend pleadings was closed. Accordingly, at the present time, Plaintiffs must not only file a motion to amend their First Amended Complaint, but also file a motion to modify the Third Amended Rule 16 Scheduling Order.

In the *Johnson* decision, discussed *supra*, the Ninth Circuit stressed the importance of the Rule 16 order, and held that its standards could not be circumvented by an appeal to those of Rule 15. 975 F.2d at 608, 610. The *Johnson* court therefore applied the Rule 16 "good cause" standard to a dilatory motion to amend a complaint.

As discussed in *Johnson*, the Rule 16 good cause standard primarily considers the diligence of the party seeking amendment. *Id.* at 609. Plaintiffs have not filed a motion to amend the complaint in the one-and-a-half years since filing their Motion for Partial Summary Judgment and Supplemental Memorandum in June 2002.

**20.** IDEA defines FAPE as

special education and related services that—
(A) have been provided at public expense, under public supervision and direction, and without charge;
(B) meet the standards of the State educational agency;
(C) include an appropriate preschool, elementary, or secondary school education in the State involved; and

(D) are provided in conformity with the individualized education program required under section 1414(d) of this title.
20 U.S.C. § 1401(8).

**21.** An IEP is prepared by an IEP team and is a written statement for each child with a disability designed to evaluate the current educational performance of that child, as well as document that child's educational needs and define the special education and related services or aids required. 20 U.S.C. §§ 1414(d)(1)(A), (d)(1)(B).

Moreover, Plaintiffs have not filed a motion to modify the Rule 16 Scheduling Order during that time. Plaintiffs were certainly aware that the arguments and claims they asserted in their motion and supplemental memorandum were not pled in their First Amended Complaint, but have not provided any explanation whatsoever. The Court accordingly finds that Plaintiffs did not conduct the due diligence required to meet the good cause standard, and therefore dismisses Plaintiffs' claims related to denial of FAPE or an IEP under IDEA.[22]

The Court notes, however, that Plaintiffs allege in their First Amended Complaint that the imposition of discipline on John discriminated against him on the basis of his disability in violation of Section 504. Accordingly, the Court does not dismiss these claims in connection with State Defendants' Motion to Strike, but rather addresses them in the discussion on State Defendants' Motion for Judgment on the Pleadings and for Summary Judgment. See infra Discussion Section III.A.2.c.

### III. State Defendants' Motion for Judgment on the Pleadings and Summary Judgment

As an initial matter, the Court notes that Plaintiffs concede the abandonment of all claims against Defendant Herman Aizawa in both his individual and official capacities. The Court therefore dismisses Defendant Aizawa from the lawsuit.

State Defendants also argue that Plaintiffs do not make any allegations in the First Amended Complaint that would establish a violation of H.R.S. § 302A-1001, which is directed at discrimination on the basis of gender.[23] Plaintiffs do not oppose this argument, and furthermore confirmed abandonment of this cause of action at oral argument. The Court therefore dismisses Plaintiffs' H.R.S. § 302A-1001 claims against all Defendants.

### A. Section 504

#### 1. Individual Capacity

■ State Defendants argue that Section 504 of the Rehabilitation Act cannot support a lawsuit against them in their individual capacity. In Vinson v. Thomas, 288 F.3d 1145, 1156 (9th Cir.2002), the Ninth Circuit held that "a plaintiff cannot bring an action under 42 U.S.C. § 1983 against a State official in [his or] her individual capacity to vindicate rights created by Title II of the ADA or [S]ection 504 of the Rehabilitation Act." Although the

**22.** The Court furthermore finds that even if it did not dismiss these claims, (1) Plaintiffs' claims under IDEA were settled between the parties by agreement for the 1998–1999 school years (encompassing the times of the Zane and Keala incidents), and between September 1999 through March, 2000, see (Exhs. "A" & "B" to State Defendants' CSOF); and (2) Plaintiffs do not establish that they exhausted their administrative remedies as to their potential IDEA claims for any other time period. See Robb v. Bethel Sch. Dist. # 403, 308 F.3d 1047, 1049–50 (9th Cir.2002) (holding that "a plaintiff cannot avoid the IDEA's exhaustion requirement merely by limiting a prayer for relief to money damages," because " 'available' relief [means] relief suitable to remedy the wrong done the plaintiff, which

may not always be relief in the precise form the plaintiff prefers" (citing Charlie F. v. Bd. of Educ., 98 F.3d 989, 992 (7th Cir.1996); Padilla v. Sch. Dist. No. 1, 233 F.3d 1268, 1274 (10th Cir.2000))); Zasslow v. Menlo Park City Sch. Dist., No. C–01–0537 SC, 2001 WL 1488617 at *7–9 (N.D.Cal. Nov. 19, 2001).

**23.** H.R.S. § 302A-1001 provides that:

No person in the State, on the basis of sex, shall be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any educational or recreational program or activity receiving state or county financial assistance or utilizing state or county facilities.

Ninth Circuit has not directly addressed the issue of whether Section 504 itself provides for individual capacity suits against public officials, *see Eason v. Clark County Sch. Dist.*, 303 F.3d 1137, 1144–45 (9th Cir.2002), a number of other circuit courts of appeal have determined that Section 504 does not provide for such suits. *E.g., Garcia v. S.U.N.Y. Health Scis. Ctr.*, 280 F.3d 98, 107 (2d Cir.2001); *Hiler v. Brown*, 177 F.3d 542, 545–46 (6th Cir. 1999), *cited in Baird v. Rose*, 192 F.3d 462, 472 (4th Cir.1999). The Court finds the decision of the Second, Fourth, and Sixth Circuits persuasive, especially in light of the Ninth Circuit's holding in *Vinson*, and accordingly grants State Defendants' motion as to Plaintiffs' Section 504 claims against Defendants Murakami and Yamakawa in their individual capacities.[24]

## 2. *Official Capacity, Hawaii DOE, and A–Plus*

### a. *Eleventh Amendment Immunity*

State Defendants argue that they are entitled to Eleventh Amendment immunity as to claims under Section 504. They assert that Congress exceeded its authority under Section 5 of the Fourteenth Amendment when enacting Section 504 as "remedial legislation," and therefore the abrogation of Eleventh Amendment immunity under Section 504 is invalid. State Defendants also assert that the State of Hawaii did not waive its Eleventh Amendment immunity by accepting federal funds in 1998.

▉ Despite the Supreme Court's recent decisions concerning Eleventh Amendment immunity in *Bd. of Trs. v. Garrett*, 531 U.S. 356, 121 S.Ct. 955, 148 L.Ed.2d 866 (2001), *Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 120 S.Ct. 631, 145 L.Ed.2d 522 (2000), *Coll. Savs. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 119 S.Ct. 2219, 144 L.Ed.2d 605 (1999), the Ninth Circuit has repeatedly held that a state's acceptance of federal funds clearly waives the state's Eleventh Amendment immunity. *E.g., Miranda B. v. Kitzhaber*, 328 F.3d 1181, 1186 (9th Cir.2003); *Lovell v. Chandler*, 303 F.3d 1039, 1051 (9th Cir.2002); *Douglas v. Cal. Dep't of Youth Auth.*, 271 F.3d 812, 820–21, *amended by* 271 F.3d 910 (9th Cir.2001). As this Court noted in *Patrick W. v. Lemahieu*, 165 F.Supp.2d 1144, 1148 n. 3 (D.Haw.2001), it is bound to follow the well established precedent of the Ninth Circuit. The Court accordingly finds that the State waived its Eleventh Amendment immunity as to Section 504 by accepting federal funding, and therefore denies State Defendants' motion as to Section 504 Eleventh Amendment immunity.[25]

### b. *Respondeat Superior under Section 504*

▉ State Defendants argue that respondeat superior does not apply to Section 504, relying on *Barnes v. Gorman*, 536 U.S. 181, 122 S.Ct. 2097, 153 L.Ed.2d 230 (2002). Plaintiffs contend that respondeat superior liability applies to Section 504 claims and therefore the Hawaii DOE and

**24.** The Court also dismisses Plaintiffs' Section 504 claims against Defendant Zane, pursuant to the parties' averred settlement.

**25.** The Court therefore need not reach the issue of whether Congress validly abrogated the state's Eleventh Amendment immunity when it enacted Section 504. *E.g., Miranda*

*B.*, 328 F.3d at 1186; *Lovell*, 303 F.3d at 1051 n. 5.

The Court further notes that the *Lovell* court rejected the State of Hawaii's argument that Congress exceeded its spending clause powers when it conditioned the receipt of Rehabilitation Act funds on a waiver of sovereign immunity. 303 F.3d at 1051.

A–Plus are liable for the alleged discrimination by Defendants Keala and Zane.

The Ninth Circuit has held that the doctrine of respondeat superior applies to Section 504 claims, based on the policy behind the Act. *Bonner v. Lewis,* 857 F.2d 559, 566–67 (9th Cir.1988), *cited in Duvall v. County of Kitsap,* 260 F.3d 1124, 1141 (9th Cir.2001). In *Barnes,* the Supreme Court applied contract-law rules to determine that punitive damages may not be awarded in suits brought under Section 504. 536 U.S. at 189, 122 S.Ct. 2097. However the Supreme Court did not address vicarious liability, but focused on punitive damages. Thus, *Barnes* did not directly reverse the holdings of *Bonner* and *Duvall.* This Court is bound to follow well established Ninth Circuit precedent, and therefore must apply vicarious liability to Section 504 claims.[26]

### c. *Liability Under Section 504*

■ Section 504 of the Rehabilitation Act provides that:

> No otherwise qualified individual with a disability in the United States … shall, solely by reason of his or her disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance …

29 U.S.C. § 794. To obtain relief under Section 504, Plaintiff John must show (1) that he is disabled as defined by the Act; (2) that he is otherwise qualified to participate in school activities; (3) that the school receives federal financial assistance; and (4) that he was excluded from participating in, denied the benefits or services of, or subject to discrimination at, the school solely by reason of his disability.[27] *Zasslow,* 2001 WL 1488617 at *16 (citing *W.B. v. Matula,* 67 F.3d 484, 492 (3d Cir.1995); *see Duvall,* 260 F.3d at 1135; *Dempsey v. Ladd,* 840 F.2d 638, 640 (9th Cir.1987)).

■ To recover money damages under Section 504, a plaintiff must additionally prove intentional discrimination on the part of the defendant. *Duvall,* 260 F.3d at 1138 (citing *Ferguson v. City of Phoenix,* 157 F.3d 668, 674 (9th Cir.1998)).

### i. *Prima Facie Case*

■ In their First Amended Complaint, Plaintiffs assert that the disciplinary measures imposed on John during the Zane and Keala incidents violated the regulations promulgated by the State of Hawaii implementing Section 504, and therefore discriminated against John because of his disability. Defendants, however, argue that Plaintiffs cannot establish a prima facie case under Section 504 because Plaintiff John was not denied equal access to any federally funded benefits or services and that the disciplinary acts did not discriminate against him.[28]

26. The Court acknowledges that the *Barnes* decision may call into question the Ninth Circuit's reasoning in *Bonner,* in that the court did not apply contract-law rules when determining whether respondeat superior applied to claims made under Section 504. Nonetheless, until the Ninth Circuit extends the holding of *Barnes* to the applicability of respondeat superior, the Court finds that it is bound to follow precedent.

27. The parties do not dispute that Plaintiff John satisfies the first and second elements, and that Defendant Hawaii DOE receives federal financial assistance, satisfying the third element. Thus, the only issue before the Court is the fourth element.

28. Although FAPE and an IEP are federally funded benefits under IDEA, the Court, as discussed *supra,* dismisses Plaintiffs' Section 504 claims based on FAPE or IEP, and alternatively finds these claims barred because Plaintiffs have either released the claims, or have not otherwise exhausted their administrative remedies. *See supra* Discussion Section II (citing (Exhs. "A" & "B" to State Defendants' CSOF filed June 12, 2002); *Robb,*

As an initial matter, the Court notes that Plaintiff John fully participated in the A–Plus program, which was available to all students.[29] The Court thus finds no basis for a Section 504 claim in Plaintiff John's involvement with A–Plus. Accordingly, Plaintiffs claim for recovery under Section 504 is based entirely upon Defendant Zane's and Defendant Keala's "discipline" of Plaintiff John.

The actions of Defendants Zane and Keala did not exclude Plaintiff John from participation in a school activity, deny him the benefits or services of the school, or discriminate against him. Smacking a child in the back of the head and dragging him across the school yard, or taping a child's head to a tree would be inappropriate measures for disciplining any student, regardless of disability, and are not sanctioned by any of the Hawaii Administrative Rules ("H.A.R.") that regulate school discipline. Nevertheless, one or two independent and isolated [30] incidents of inappropriate discipline do not constitute a denial of services or benefits, or discrimination, especially when Plaintiffs do not provide any evidence establishing that Defendant Zane

was aware of Plaintiff John's disability on February 4, 1998, and the parties do not dispute that Defendant Keala was not aware of Plaintiff John's disability on February 19, 1998.[31] The Court finds that no reasonable fact finder could determine that either Defendant Zane or Keala acted solely on the basis of John's disability, given the complete lack of knowledge of the disability on their part.

As to Defendants Murakami and Yamakawa, neither was personally involved with either the Zane or Keala incidents. Plaintiffs provide no evidence that would establish actual or constructive knowledge of the likelihood of either the Zane or Keala incident.[32] The Court finds that no reasonable fact finder could determine that the actions of either Defendants Murakami or Yamakawa excluded Plaintiff John from participation in a school activity, denied him the benefits or services of the school, or discriminated against him, solely on the basis of his disability.

The Court thus finds that Plaintiffs cannot establish a requisite element of their prima facie case. Accordingly, the Court finds that no genuine issue of material fact

308 F.3d at 1049–50; *Charlie F.*, 98 F.3d at 992; *Padilla*, 233 F.3d at 1274); *Zasslow*, 2001 WL 1488617 at *7–9.

29. The Court additionally notes that the A–Plus program is not an educational program, but rather, as State Defendants represented at the hearing, a latch-key babysitting program.

30. Plaintiffs do not provide any facts that establish a nexus between the Zane incident and the Keala incident. The Zane incident occurred while Plaintiff John was participating in the A–Plus after school program, while the Keala incident occurred during lunchtime recess. Even viewing the facts in the best light to Plaintiffs, the Court finds that no reasonable jury would determine that the Zane incident would indicate that the Keala incident was likely to happen—the employees in the A–Plus program were not involved in the School's regular operations.

31. Although knowledge of a public employee can be imputed to a public employer, *e.g.*, *Duvall*, 260 F.3d at 1130–32, the Court finds no reason to extend the doctrine to impute a public employer's knowledge to its employees. *Cf. id.* at 1140 n. 15 (stating that knowledge of a disabled party's requests for reasonable accommodation would not be imputed to a judge who was unaware of the requests).

32. Although Plaintiffs provide the declarations of two men who claim Defendant Keala slammed their heads together in 1988, Plaintiffs do not provide any evidence that such an event was reported, and therefore do not establish constructive knowledge of any propensity on the part of Defendant Keala for violence or inappropriate disciplinary action.

exists and that State Defendants are entitled to judgment as a matter of law. Nevertheless, the Court will still consider State Defendants' argument as to monetary damages.

### ii. *Monetary Damages*

State Defendants further argue that Plaintiffs cannot establish the intentional discrimination required to succeed on their Section 504 claim for monetary damages. In *Duvall,* the Ninth Circuit held that intentional discrimination can be shown by establishing "deliberate indifference" by the defendant. *Id.* The *Duvall* court further explained that "[d]eliberate indifference requires both knowledge that a harm to a federally protected right is substantially likely, and a failure to act upon the likelihood." *Id.* at 1139.

Although State Defendants do not dispute Plaintiff John's disability, the Court does not impute knowledge of the disability to either Defendant Zane or Keala. *See supra* note 31. Furthermore, State Defendants argue that Plaintiffs cannot meet the standard required to establish the second *Duvall* prong.

■ As the *Duvall* court explained, "deliberate indifference does not occur where a duty to act may simply have been overlooked .... [T]o meet the second element of the deliberate indifference test, a failure to act must be a result of conduct that is more than negligent, and involves an element of deliberateness." 260 F.3d at 1139.

■ When the Court determined in its November 29, 2001 Order that punitive damages were not appropriate against Defendant Keala, it found that "[n]o reasonable jury could conclude that Defendant Keala acted in bad faith, maliciously or with callous indifference to John's rights." *Doe v. Hawaii,* Civ. No. 00–00044 at 39 (D.Haw. Nov. 29, 2001). Defendant Keala had absolutely no knowledge whatsoever regarding Plaintiff John's disability. Accordingly, the Court finds that the actions of Defendant Keala do not rise to the level required by *Duvall,* and therefore Defendant Keala could not have acted with deliberate indifference toward Plaintiff John's disability.[33]

Similarly, the Court finds that Defendant Zane did not act with deliberate indifference toward Plaintiff John. As discussed *supra,* Plaintiffs provide no evidence that Defendant Zane was aware of John's disability. Furthermore, Plaintiffs provide no evidence that would establish that Defendant Zane acted with bad faith or malice. The Court therefore finds that, as with Defendant Keala, no reasonable jury could find that Defendant Zane acted in a manner deliberately indifferent to Plaintiff John's disability.

As to Defendants Murakami and Yamakawa, the Court likewise finds that their conduct does not rise to the level required

---

**33.** Plaintiffs misplace their reliance on *Delano–Pyle v. Victoria County,* 302 F.3d 567 (5th Cir.2002). *Delano–Pyle* involved an appeal from the denial of a motion for judgment as a matter of law made at the close of plaintiff Delano–Pyle's case-in-chief. *Id.* at 571. However, because of a procedural misstep by the defendant Victoria County, the Fifth Circuit reviewed the jury's verdict only for "plain error," which required the court "to merely ascertain if the plaintiff has submitted '*any* evidence in support of his claim.' " *Id.* at 573

(quoting *In re Eisenhut,* 44 C.C.P.A. 974, 245 F.2d 481, 482 (1957)). Thus, contrary to Plaintiffs' assertions, the *Delano–Pyle* court did not actually determine that there was sufficient evidence to support a finding of intentional discrimination, but rather whether there was any evidence.

Furthermore, the Victoria County Deputy whom the jury found intentionally discriminated against the plaintiff, actually knew that Delano–Pyle was disabled, unlike Defendant Keala. *See id.* at 575.

by *Duvall*. As discussed *supra*, neither Defendant Murakami nor Defendant Yamakawa was personally involved with either the Zane or Keala incidents, and Plaintiffs provide no evidence that would establish actual or constructive knowledge of the likelihood of either the Zane or Keala incident.[34] The Court accordingly finds that no reasonable jury would determine that Plaintiffs establish conduct rising to the level required by *Duvall*, and therefore could not find that either Defendant Murakami or Defendant Yamakawa acted with deliberate indifference toward Plaintiff John.

Lacking any intentional discrimination or deliberate indifference on the part of the employees of Defendant Hawaii DOE the Court thus finds that Defendant Hawaii DOE cannot be found to have intentionally discriminated against or acted with deliberate indifference toward Plaintiff John.

### iii. *Conclusion*

As discussed *supra*, the Court finds that Plaintiffs cannot establish any basis for Section 504 liability as to Defendant A–Plus. Furthermore, Plaintiffs cannot establish that Plaintiff John was excluded from participating in, denied the benefit or services of, or subject to discrimination at, the school solely by reason of his disability and therefore cannot establish their prima facie case under Section 504. The Court moreover finds that Plaintiffs cannot establish that any Defendant intentionally

discriminated against or acted with deliberate indifference toward John because of his disability, and therefore cannot recover monetary damages. Thus, no genuine issue of material fact exists, and State Defendants are entitled to judgment as a matter of law. The Court accordingly grants State Defendants motion as to Plaintiffs' Section 504 claim against Defendants Murakami and Yamakawa in their official capacities,[35] Hawaii DOE, and A–Plus.[36]

### B. *Section 1983*

#### 1. *Individual Capacity*

State Defendants argue that the Court should dismiss Plaintiffs' § 1983 claims against Defendants Murakami and Yamakawa in their individual capacities, because they had no direct involvement with the incidents giving rise to these claims, and that respondeat superior does not apply to § 1983. Alternatively, State Defendants' argue that they are entitled to qualified immunity.

■ Generally, there is no respondeat superior liability under § 1983. *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir.2002), *quoted in Bell v. Clackamas County*, 341 F.3d 858, 867 n. 3 (9th Cir.2003). "A supervisor may be liable under § 1983 only if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct

34. The Court again notes that one or two completely independent and isolated incidents of inappropriate discipline do not constitute a denial of services or benefits, or discrimination, and likewise do not rise to the level of conduct required by *Duvall*.

35. As discussed *infra*, it is clearly established that an official capacity lawsuit is no different from a suit against the state itself. In the interest of judicial economy, the Court accordingly dismisses Plaintiffs' Section 504

claims against Defendants Keala and Zane, in their official capacity.

36. Furthermore, the Court finds no ambiguity in the settlement agreements, and additionally holds that Plaintiffs released all claims relating to Section 504, and are therefore barred from raising Section 504 claims in this lawsuit. *See* (Exhs. "A" & "B" to State Defendants' CSOF filed June 12, 2002).

and the constitutional violation." *Jeffers v. Gomez,* 267 F.3d 895, 915 (9th Cir.2001). In other words, supervisors "can be held liable 'only if they play an affirmative part in the alleged deprivation of constitutional rights,' [i.e. by] 'set[ting] in motion a series of acts by others ..., which he knew or reasonably should have known, would cause others to inflict the constitutional injury.'" *Graves v. City of Coeur D'Alene,* 339 F.3d 828, 848 (9th Cir.2003) (citations omitted) (quoting *Rise v. Oregon,* 59 F.3d 1556, 1563 (9th Cir.1995); *Larez v. City of LA,* 946 F.2d 630, 646 (9th Cir.1991)).

Viewing the asserted facts and allegations in the best light to Plaintiffs, the Court determines that Plaintiffs cannot establish that Defendants Murakami or Yamakawa were personally involved in either the Zane incident or the Keala incident, or that Defendants Murakami or Yamakawa set into motion the alleged constitutional violations committed by Defendants Zane and Keala. Neither Defendant Murakami nor Defendant Yamakawa was present at the scene of either of the two incidents. Furthermore, Plaintiffs produce no evidence that would establish that either Defendant Murakami or Yamakawa induced the actions of either Defendant Zane or Defendant Keala. The Court thus finds that no genuine issue of material fact exists and that Defendants Murakami and Yamakawa are entitled to judgment as a matter of law that they are not liable under § 1983 in their individual capacities.[37]

The Court accordingly grants State Defendants' motion as to Plaintiffs' § 1983 claims against Defendants Murakami and Yamakawa in their individual capacities.[38]

### 2. *Official Capacity, Hawaii DOE and A-Plus*

State Defendants argue that Plaintiffs cannot sustain a § 1983 suit against an individual in his or her official capacity because of Eleventh Amendment immunity. The Court agrees. A suit against a state official acting in his or her official capacity should be treated as one against the state. *Hafer v. Melo,* 502 U.S. 21, 25, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991); *Will v. Michigan,* 491 U.S. 58, 71, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989) (holding that "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office[, and therefore] is no different from a suit against the State itself" (citations omitted)). Accordingly, Defendants Murakami and Yamakawa, in their official capacities, share the immunities of the State of Hawaii.[39] *E.g., Mitchell v. LA Community Coll. Dist.,* 861 F.2d 198, 201 (9th Cir.1988). Thus, Eleventh Amendment immunity bars damages claims against a state, its agencies and its employees in their official capacity. *Regents of Univ. of Cal. v. Doe,* 519 U.S. 425, 429, 117 S.Ct. 900, 137 L.Ed.2d 55 (1997); *Thomas v. Nakatani,* 128 F.Supp.2d 684, 695 (D.Haw.2000). Section 1983 does not override the Eleventh Amendment immunity of a state. *Quern v. Jordan,* 440 U.S. 332, 339–41, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979). Moreover, neither a state, its agencies, nor its officials acting in their official capacity are "persons" that can be sued under § 1983. *Cortez v. County of*

---

**37.** The Court therefore does not address State Defendants' alternative argument for qualified immunity.

**38.** The Court also dismisses Plaintiffs' § 1983 claims against Defendant Zane, pursuant to the parties' averred settlement.

**39.** As discussed *supra,* the Court finds that the State of Hawaii is entitled to Eleventh Amendment immunity against Plaintiffs' § 1983 claims.

*LA,* 294 F.3d 1186, 1188 (9th Cir.2002) (citing *Will,* 491 U.S. at 70–71, 109 S.Ct. 2304); *Thomas,* 128 F.Supp.2d at 695. The Court accordingly finds that Plaintiffs' § 1983 claims against Defendants Murakami and Yamakawa in their official capacities, Hawaii DOE, and A–Plus are barred by the Eleventh Amendment. *See Doe v. Hawaii,* Civ. No. 00–00044 at 10 n. 7 (D.Haw. Nov. 29, 2001). Therefore the Court grants State Defendants' motion as to Plaintiffs' § 1983 claims against Defendants Murakami and Yamakawa in their official capacities, Hawaii DOE, and A–Plus.[40]

## C. *State Law Claims*

### 1. *Individual Capacity*

 State Defendants argue that Defendants Murakami and Yamakawa, in their individual capacity, (1) hold qualified immunity under Hawaii law; (2) cannot be liable for intentional torts because they were not directly involved with either the Zane or Keala incidents; and (3) did not act negligently. This Court agrees with State Defendants' argument as to qualified immunity. *E.g., Pahk v. Hawaii,* 109 F.Supp.2d 1262, 1269 (D.Haw.2000) (holding that "[u]nder Hawaii law, a nonjudicial government official performing a public duty enjoys the protection of what has been termed a qualified or conditional privilege") (citing *Towse v. Hawaii,* 64 Haw. 624, 647 P.2d 696, 702 (1982)); *Black v. City & County of Honolulu,* 112 F.Supp.2d 1041, 1048–49 (D.Haw.2000).

Accordingly, Defendants Murakami and Yamakawa, in their individual capacities as nonjudicial officers, hold qualified immunity and "[are] immune from liability unless [Plaintiffs provide] 'clear and convincing proof that [they were] motivated by malice.'" *Black,* 112 F.Supp.2d at 1048–49 (quoting *Medeiros v. Kondo,* 55 Haw. 499, 522 P.2d 1269, 1272 (1974)) (citing *Runnels v. Okamoto,* 56 Haw. 1, 525 P.2d 1125, 1128–29 (1974); *Seibel v. Kemble,* 63 Haw. 516, 631 P.2d 173, 177 (1981)); *accord Pahk,* 109 F.Supp.2d at 1269 (citing *Towse,* 647 P.2d at 702).

As discussed *infra,* Plaintiffs do not provide any evidence that Defendants Murakami or Yamakawa acted maliciously. Neither Defendant was personally involved in the intentional torts alleged by Plaintiffs. Plaintiffs do not provide evidence that either Defendant knew or should have know that either incident would occur. The Court therefore finds that State Defendants, in their individual capacities, hold qualified immunity under Hawaii law.[41] Accordingly, the Court finds that no genuine issue of material fact exists, and that Defendants Murakami and Yamakawa, in their individual capacities, are entitled to judgment as a matter of law as to Plaintiffs' state law claims, and thus grants State Defendants' motion as to Plaintiffs' claims under False Imprisonment, Assault and Battery, Negligence and Gross Negligence, Negligent Infliction of Emotional Distress, and Loss of Consortium against Defendants Murakami and

---

40. The same reasoning applies to Plaintiffs' § 1983 claims against Defendant Zane in her official capacity, and the Court therefore dismisses those claims in the interest of judicial economy.

The Court also notes that its November 29, 2001 Order dismissed Plaintiffs' § 1983 claims against Defendant Keala in his official capacity.

41. Because the Court finds that Defendants Murakami and Yamakawa are entitled to qualified immunity, it need not address whether they were involved in any way with the two incidents such that they would incur liability under the state law claims.

Yamakawa in their individual capacities.[42]

### 2. Official Capacity, Hawaii DOE, and A–Plus

■ State Defendants argue that the State of Hawaii retains Eleventh Amendment immunity as to state claims raised in federal court. The Eleventh Amendment's general prohibition on federal claims brought against a state defendant, unless the state has specifically consented to suit, also applies to claims brought under supplemental jurisdiction. *Raygor v. Regents of Univ. of Minn.*, 534 U.S. 533, 539–42, 122 S.Ct. 999, 152 L.Ed.2d 27 (2002); *accord Bethel Native Corp. v. Dep't of Interior*, 208 F.3d 1171 (9th Cir. 2000); *see College Savs. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 119 S.Ct. 2219, 144 L.Ed.2d 605 (1999); *Alden v. Maine*, 527 U.S. 706, 119 S.Ct. 2240, 144 L.Ed.2d 636 (1999).

■ Although the State of Hawaii generally waives liability of its sovereign immunity as to torts of its employees in the Hawaii State Tort Liability Act, H.R.S. ch. 662, this waiver only applies to claims brought in state courts and does not constitute a waiver of the State's Eleventh Amendment immunity. *OHA v. Dep't of Educ.*, 951 F.Supp. 1484, 1491–92 (D.Haw. 1996); *see also Fordyce v. City of Seattle*, 55 F.3d 436, 441 (9th Cir.1995) ("Although [a state] may waive the protection of the Eleventh Amendment's jurisdictional bar by passing a statute consenting to be sued, a statute consenting to suit in state court does not constitute consent to suit in federal court." (emphasis added) (citing *Fla. Dep't of Health & Rehab. Servs. v. Fla.*

*Nursing Home Ass'n*, 450 U.S. 147, 149–50, 101 S.Ct. 1032, 67 L.Ed.2d 132 (1981); *Kennecott Copper Corp. v. State Tax Comm'n*, 327 U.S. 573, 66 S.Ct. 745, 90 L.Ed. 862 (1946))).

As discussed *supra*, a state, its agencies, and employees acting in their official capacity all share Eleventh Amendment immunity. The Court accordingly grants State Defendants' motion as to Plaintiffs' state law claims against Defendants Murakami and Yamakawa in their official capacities, Hawaii DOE and A–Plus.[43]

### D. Punitive Damages

State Defendants' ask the Court to grant judgment on Plaintiffs' punitive damages claims against all Defendants. In their First Amended Complaint, Plaintiffs only assert claims for punitive damages against Defendants Keala[44] and the Hawaii DOE. (First Amended Complaint ¶ 76.) Although Plaintiffs appear to assert punitive damages against all Defendants in their December 18, 2003 Opposition to State Defendants' Motion for Judgment on the Pleadings and Summary Judgment, the Court finds that these are new claims which are unsupported by the First Amended Complaint.

Plaintiffs did not make any attempt to amend the First Amended Complaint, and have not made any attempt to modify the deadline set by the Court's Rule 16 Scheduling Orders. For the reasons articulated *supra*, in its discussion of Defendants' Motion to Strike, the Court dismisses these claims. *See supra* Discussion Section II.

---

**42.** The Court dismisses Plaintiffs' state law claims against Defendant Zane pursuant to the parties' averred settlement.

**43.** As discussed *supra*, it is clearly established that an official capacity lawsuit is no different from a suit against the state itself. In the interest of judicial economy, the Court ac-

cordingly dismisses Plaintiffs' state law claims against Defendants Keala and Zane, in their official capacities.

**44.** The punitive damages claim against Defendant Keala was dismissed by the Court's November 29, 2001 Order.

The Court therefore grants State Defendants' motion as to punitive damages against Defendants Murakami and Yamakawa in their individual and official capacities, and against Defendant A–Plus.[45]

As to Plaintiffs' claims against Hawaii DOE, State Defendants argue that (1) the State of Hawaii has not waived its immunity to punitive damages, (2) Section 504 does not permit punitive damages claims, and (3) punitive damages are not warranted. The Court agrees.

 First, under the HSTCA, the State of Hawaii explicitly retains its sovereign immunity as to punitive damages. Haw.Rev.Stat. § 662–2. Second, as discussed *supra*, the Hawaii DOE shares the state's Eleventh Amendment immunity as to § 1983, and therefore no punitive damages can be assessed under § 1983. Third, in *Barnes v. Gorman*, 536 U.S. 181, 189–90, 122 S.Ct. 2097, 153 L.Ed.2d 230 (2002), the Supreme Court held that punitive damages may not be awarded in suits brought under Section 504. *See Lovell v. Chandler*, 303 F.3d 1039, 1048 n. 3 (9th Cir.2002).

Furthermore, the Court finds that punitive damages are unwarranted. As with Defendant Keala, the Court finds that no reasonable jury could conclude that State Defendants acted in bad faith, maliciously, or with callous indifference. *See Doe v. Hawaii*, Civ. No. 00–00044 at 38–39 (D.Haw. Nov. 29, 2001) (dismissing Plaintiffs' punitive damages claims against Defendant Keala). The Court therefore finds that State Defendants have not engaged in aggravated or outrageous misconduct or acted with conscious indifference. *See id.* (quoting *Romero v. Hariri*, 80 Hawai'i 450,

911 P.2d 85, 92 (Haw.Ct.App.1996) *Masaki v. Gen. Motors Corp.*, 71 Haw. 1, 780 P.2d 566, 575 (1989)). The Court accordingly finds the imposition of punitive damages unjustified.

The Court thus finds that punitive damages are barred as to all of Plaintiffs' claims against Defendant Hawaii DOE, and accordingly GRANTS State Defendants' motion as to Plaintiffs' punitive damages claims against Defendant Hawaii DOE.

**IV. Plaintiffs' Motion for Partial Summary Judgment**

As discussed *supra*, the Court grants State Defendants' Motion for judgment as to Plaintiffs' Section 504 claims. The Court accordingly denies Plaintiffs' Motion for Partial Summary Judgment.[46]

**CONCLUSION**

For the foregoing reasons, the Court DISMISSES Plaintiffs' Counter–Motion for Summary Judgment, GRANTS IN PART and DENIES IN PART State Defendants' Motion to Strike, GRANTS State Defendants' Motion for Judgment on the Pleadings and Summary Judgment, and DENIES Plaintiffs' Motion for Partial Summary Judgment.

The Court DISMISSES Plaintiffs' Counter–Motion for Summary Judgment. Notwithstanding Local Rule 7.9, the counter-motion is a dispositive motion filed after the deadline set by the Court's Rule 16 Scheduling Order. The Ninth Circuit has held that the Rule 16 Order controls the proceedings, and that its standards cannot be circumvented. Plaintiffs do not meet

---

45. The Court discusses the punitive damages claims against Defendant Hawaii DOE *infra*.

46. The Court therefore does not reach State Defendants' argument as to Plaintiff Jane's

standing to assert a Section 504 claim, raised in their Opposition to Plaintiffs' Motion for Partial Summary Judgment.

the diligence required by the Rule 16 "good cause" standard to modify a scheduling order.

The Court DENIES State Defendants' Motion to Strike as to the expert witness disclosure. At oral argument, State Defendants waived this portion of the motion. The Court, however, DISMISSES Plaintiffs claims relating to IDEA. Plaintiffs do not adequately assert these claims in their First Amended Complaint. They have not filed any motion to amend the First Amended Complaint, which was filed over two years ago. Furthermore, Plaintiffs have not filed any motion to modify the Court's Second or Third Amended Scheduling Orders. Thus, Plaintiffs do not meet the diligence required by the Rule 16 standard to modify a scheduling order, which would be required to amend the pleadings at this stage. The Court moreover finds that Plaintiffs settled or otherwise failed to exhaust their administrative remedies as to their IDEA claims.

The Court GRANTS IN PART and DENIES IN PART State Defendants' Motion for Judgment on the Pleadings and Summary Judgment. First, the Court DISMISSES Defendant Aizawa—Plaintiffs concede abandonment of all claims against Defendant Aizawa in both his individual and official capacities. Second, the Court DISMISSES the H.R.S. § 302A–1001 claims—Plaintiffs do not assert any facts or any allegations in their complaint or any other pleading that would support a claim under H.R.S. § 302A–1001, and furthermore conceded abandonment of this claim. Third, the Court DISMISSES the Section 504 claims against Defendants Murakami and Yamakawa in their individual capacity—Section 504 cannot support a lawsuit against a public official in his or her individual capacity. Fourth, the Court DE-NIES State Defendants' motion as to Section 504 Eleventh Amendment immunity— the Supreme Court has not directly ruled on the issue, and this Court is therefore bound by Ninth Circuit precedent. Fifth, the Court GRANTS State Defendants' motion as to liability under Section 504— Plaintiffs cannot show exclusion from benefits or services, or discrimination, and furthermore cannot show that any Defendant intentionally discriminated or acted with deliberate indifference toward John. The Court additionally holds that Plaintiffs have released all their Section 504 claims. Sixth, the Court GRANTS State Defendants' motion as to § 1983—the State of Hawaii, its agencies, and officers all share Eleventh Amendment immunity against § 1983, and neither Defendant Murakami nor Yamakawa was directly involved with the Keala incident. The Court also dismisses Plaintiffs' § 1983 claims against Defendant Zane in her official capacity.[47] Seventh, the Court GRANTS State Defendants' motion as to Plaintiffs' claims under state law. Defendants Hawaii DOE, A-Plus and Defendants Murakami and Yamakawa, in their official capacities, share the Eleventh Amendment immunity of the State of Hawaii, which has not been waived as to state law claims raised in federal court. The Court also dismisses Plaintiffs' state law claims against Defendants Keala and Zane in their official capacities. Defendants' Murakami and Yamakawa, in their individual capacities, are entitled to qualified immunity against Plaintiffs' state law claims. Eighth, the Court GRANTS State Defendants' motion as to Punitive Damages. Plaintiffs only assert punitive damages against Defendants Keala and the Hawaii DOE. The Court dismissed Punitive Damages against Defendant Keala in its November 29, 2001 Order. The State of Hawaii retains sover-

---

47. In its November 29, 2001 Order, the Court dismissed Plaintiffs' Section 1983 claims against Defendant Keala in his official capacity.

eign immunity as to punitive damages on state claims, is insulated against punitive damages under § 1983 by virtue of its sovereign immunity, and the Supreme Court has held that Section 504 does not support punitive damages. Furthermore, punitive damages are not warranted.

The Court DENIES Plaintiffs' Motion for Partial Summary Judgment. Plaintiffs ask the Court for judgment as to liability on their Section 504 claims against Defendants Hawaii DOE and A–Plus. Because the Court grants State Defendants' Motion for Judgment on the Pleadings and Summary Judgment, the Court accordingly denies Plaintiffs' motion.

Accordingly, Plaintiffs' only remaining causes of action in this lawsuit are the Section 1983 and state law claims against Defendant Keala in his individual capacity.

IT IS SO ORDERED.